393 P.2d 912

Stewart DAVIS and Delores Davis, husband and wife, and R. F. Coffee, on behalf of themselves and all other taxpayers of the City of Winslow, State of Arizona, Appellants,

v.

G. J. HALE, Sr., E. Cecil Allen, James I. Chavez, Ross F. Dover, R. L. McNelly, Lee O. Pisel, R. E. Wickham, John E. Scott, F. C. Whipple, and H. B. Vasey, Appellees.

No. 7583.

Supreme Court of Arizona,

En Banc.

July 1, 1964.

Stevenson & Babbitt, Flagstaff, for appellants.

Wilson, Compton & Wilson, Flagstaff, for appellees.

BERNSTEIN, Justice.

Appellants-plaintiffs, as taxpayers of the City of Winslow, instituted action against the appellees-defendants in the trial court seeking to recover certain monies paid to the defendant H. B. Vasey, upon the grounds that subsequent to his appointment as City Manager, he was appointed and accepted the office of City Engineer, an alleged incompatible office. Plaintiffs contend that by the acceptance of the second office, defendant vacated the office of City Manager and the funds paid to him in that position after his appointment as City Engineer were illegally paid and should be returned to the City of Winslow. The defendants denied that Vasey was ever appointed City Engineer and that the office of City Manager was ever vacated, or that the two offices were in any manner incompatible offices.

After making Findings of Fact and Conclusions of Law, the trial judge rendered judgment for the defendants. Plaintiffs. have appealed. The theory of plaintiffs in this appeal is that Vasey appointed himself as City Engineer with the acquiescence of the council, that the offices are incompatible, and that by performing the duties of the City Engineer the City Manager vacated

that office and payment to him of his salary as City Manager is consequently illegal.

The announcement of the vacancy of the Winslow city manager's position which appeared in the City Manager's News Letter of January 1, 1960, and which was admitted in evidence, read:

> "*Winslow, Ariz.* (6,518)—Salary $750.00 per month. Has had one manager since plan was adopted in 1957. Six councilmen elected on nonpartisan basis for overlapping four-year terms. Budget $629,500; 60 employees. Previous manager experience *and engineering experience* desired. Obtain applications from Mrs. Florence Armstrong, city clerk, P.O. Box 323." (Emphasis supplied.)

Mr. Vasey was appointed on February 2, 1960, as shown by the following excerpt from the minutes of the council:

> "Mayor Scott thought an appointment should be made tonight for the position of City Manager, two prospects having been interviewed. Councilman Chavez thought personally that Mr. Vasey should be a strong candidate for consideration to which Mr. Whipple was in accord. Councilman Wickham moved the Council appoint Harold B. Vasey as City Manager. * * * Mr. Wickham added to his motion that Mr. Vasey's salary be $750.00 per month, that his moving expenses be paid not

to exceed $350.00 providing he has moving expenses and that one-half his travel expenses for his interview be paid, seconded by Councilman Dover and carried."

Mrs. Davis appeared at meeting of the City Council on December 6, 1960, and December 20, 1960. The discussion of the December 6 meeting shows the thinking of the council at the time, and it is sufficient to quote it. The minutes of this meeting show:

> "Mrs. Deelores (sic) Davis called attention to the portion of the Charter requiring the City Manager to devote his entire time to his office, so she questioned the hiring of one man to be both City Manager and City Engineer. This was ancient history to Mr. Hale, but he had studied information from the University of Arizona and Arizona State University and the League of Arizona Cities and Towns and from the first page of the Charter which left it pretty much wide open for the Council to make the laws, for governing the City; also Article IV, Section 1 of the Charter. The only question he could see was whether the two jobs were incompatible, and if they are compatible it should have been covered by ordinance. Mrs. Davis questioned doing this without passing the ordinance. Mr. McNelly clarified this by stating the reason for the section was

so that he wouldn't have some business of his own in addition. Councilman Chavez asked that Attorney Tyler clarify the term 'compatible', Mr. Tyler agreeing that the Charter does say devote his entire time to his duties, and the Council may assign additional duties. Mr. Chavez stated we are one of five communities in the State where the manager is the sole boss over all departments and appoints the City Engineer; they have been challenged and may have to do something else. Mr. Tyler felt that in view of any court actions, they would be upheld in what they have done. Mrs. Davis not being confident, so that Mr. Tyler suggested she hire an attorney and sue. Mrs. Davis replied they could get a decision from the Attorney General, Mr. Tyler being of the opinion that the City does not have to abide by any decision of the Attorney General, feeling his was as good. Mr. Fields thought he would be down there if it was. Mr. Chavez explained that at the time, Winslow being a small community of 8,000, it was thought we weren't large enough to have a City Manager and City Engineer and a consolidation of the two jobs might be the solution. Mrs. Davis' contention was that it could be by ordinance, but there was no ordinance. Mr. Tyler thought perhaps the ordinance should be passed, Mr.

Hale being reminded somewhere in the Charter 'it says something about going to jail', so Mr. Tyler would have one prepared for the next meeting. Mrs. Davis felt this might be all right for the future, but not up until the present, Mr. Tyler's opinion being that any acts of the City Manager and City Engineer are not invalid. Mrs. Fields remarked we have a charter form of government, so let's live up to it."

Delores Davis filed this action challenging the manner in which the City Manager's salary was paid. On July 10, 1961, the method of payment of the City Manager's salary was discussed at the time of the adoption of the budget in the light of this suit. The discussion concluded as follows:

" * * * Mr. Dover was of the opinion, agreeing with Mr. Pisel, that so long as Mr. Vasey is going to serve as head of the Department, and was hire (sic) at $750.00 per month as Manager, he didn't see anything wrong with it, paying it all from the General Fund. Mayor Hale thought the budget could be looked at and it would reflect just what the City Manager is drawing. Mr. Vasey advised that one City at which he worked, an outside auditor had set his salary up as coming from nine different funds, proportionately. Mr. Dover thought it might be a good idea to have it listed from the different

departments where it might show he had saved that department more money than another, Mr. Hale adding he serves all departments, Mr. Dover agreeing, because what they assume is that he will save money for the City. Mr. Vasey said that was the way this one auditor had looked at it—that he serve other departments as much as the General. Mayor Hale reitereated (sic) that Mr. Vasey would continue as the Registered Engineer."

The trial judge in his findings of facts said:

"It is found that the defendant, H. B. Vasey, was appointed City Manager at a salary of $750.00 per month; that said salary was paid from the City Manager and the City Engineer budget, $600.00 and $150.00 per month respectively.

"It is further found that the defendant, H. B. Vasey, performed certain engineering duties without extra compensation and that said performance was within the scope of his managerial responsibilities as City Manager. There was no neglect of his duties as City Manager and the City of Winslow benefited from any extra services of the said H. B. Vasey.

"There was never an appointment by the Council of the defendant H. B. Vasey to the position of City Engineer, but only an alleged appointment of said defendant by himself to that position.

"That all funds paid to the defendant H. B. Vasey were paid to him in his capacity as City Manager while he legally held that position."

The official records of the City's action taken at the meetings and the record before the court contain evidence which amply sustains the trial judge's finding of fact.

The question of the propriety of combining the functions of City Manager and City Engineer, under modern city manager charters, a combination which is frequently made has not previously been challenged on legal grounds as far as we have been able to ascertain.

In his classic work on Municipal Corporations (5th ed. 1911) Judge Dillon said of the doctrine of incompatible offices:

"§ 417(225). Implied Resignation; Incompatible Office.—An office may be *impliedly resigned* or vacated by the incumbent being elected to and accepting an *incompatible office*. The rule says *Parke*, J., in a leading English case on this subject, that where two offices are incompatible they cannot be held together, is founded on the plainest principles of public policy, and has obtained from very early times. The prin-

ciple applies not only where the second office is the superior and more important one, but also where it is not. The rule has been generally stated in broad and unqualified terms, that the acceptance of the incompatible office, by whomsoever the appointment or election might be made, absolutely determines the original office, leaving no shadow of title in the possessor, whose successor may be at once elected or appointed, neither *quo warranto* nor a motion being necessary."

"§ 419(227). Incompatible Public Offices.—The *rule under consideration* is not limited to corporate offices, but extends, both in its principle and application *to all public offices*. Thus, if a judge of the Common Pleas accepts an appointment to the King's Bench, the first office is vacated since it is the duty of the one to correct the errors of the other. Whether offices are incompatible depends upon the charter or statute, and the nature of the duties to be performed. The same man cannot be judge and minister in the same court, and hence the offices are not compatible. Where the recorder is an adviser to the mayor, the two offices cannot be held together. So a representative in Congress holds a *public office,* within the meaning of a charter which prohibits an alderman from holding 'any other

public office' ; and upon his election to, and acceptance of 'such public office,' during his term as alderman, his office as alderman immediately becomes vacant. The proper proceeding is, by *mandamus,* to compel the common council to order a special election to fill such vacancy, and not by *quo warranto* to try the title to such office, such representative being neither a *de facto* nor *de jure* officer." (Emphasis in original.)

The objections of plaintiffs to the City Manager—City Engineer combination are based on this ancient doctrine of incompatible offices, which was recognized in Arizona in Perkins v. Manning, 59 Ariz. 60, 122 P. 2d 857 (1942). In Perkins the Superintendent of Public Health had been called to active duty in the army during the war. He brought mandamus to compel payment of his state salary. This court extended the doctrine of incompatible offices to cover the situation where it was a physical impossibility for the officer to perform the duties of both offices, and denied payment of the state salary. In this case, defendant Vasey has actually performed both the duties of City Manager and City Engineer, and Perkins is inapplicable.

State Consolidated Publishing Co. v. Hill, 39 Ariz. 21, 3 P.2d 525, on rehearing 39 Ariz. 163, 4 P.2d 668 (1931), was a taxpayer's action to compel the refund of $2,-

000 paid to a City Attorney in excess of his regular salary. The case turned on the holding that Art. 4, Pt. 2, § 17 of the Arizona Constitution, A.R.S. prohibited an increase of the City Attorney's salary during his term of office. There is no question of an increase in salary involved here. The City Manager received the $750.00 per month that the city originally contracted to pay.

 The doctrine of incompatible offices has no application to the situation where the city council, operating under a modern city manager charter, combines two offices in the interests of economy and efficiency. Where the two offices are compatible in fact, and can actually be performed by one city employee, they are compatible in law. The city council has a free hand in assigning duties and titles to its employees.

The city council cannot make a combination of offices in order to do indirectly what it could not do directly, as to give an officer a salary increase which is prohibited by Art. IV, Part 2, § 17 Arizona Constitution.

In the absence of charter provision, ordinance or statute, whether the City Manager is paid from the General Fund, or his salary is pro-rated among the departments he supervises is an accounting problem and not a legal one. All that is legally required is that the accounts truly state the facts. The City Manager is entitled to his agreed salary when he performs his duties, no matter how the bookkeeping is set up.

Judgment affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concurring.