**UNITED FARM WORKERS OF AMERICA, AFL–CIO, et al., Plaintiffs-Appellants,**

v.

**ARIZONA AGRICULTURAL EMPLOY-MENT RELATIONS BOARD, et al., Defendants-Appellees.**

No. 80–5777.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 17, 1983.

Decided March 14, 1984.

Ellen J. Eggers, Keene, Cal., for plaintiffs-appellants.

Neil Vincent Wake, Beus, Gilbert, Wake & Morrill, Phoenix, Ariz., for defendants-appellees.

Before BROWNING, Chief Judge, and CHOY, GOODWIN, HUG, SKOPIL, SCHROEDER, FLETCHER, PREGERSON, POOLE, FERGUSON and BOOCHEVER, Circuit Judges.

FERGUSON, Circuit Judge:

A panel of this court with one judge dissenting held, in an opinion withdrawn from publication by court order, *see United Farm Workers v. Arizona Agricultural Employment Relations Board,* 696 F.2d 1216 (9th Cir.1983), that the composition of the Arizona Agricultural Employment Relations Board, as required by Arizona statute, deprived the plaintiffs of due process of law. That determination is reversed, and the case is remanded to the panel for consideration of the other issues presented by the litigation.

Agricultural employees are excluded from coverage under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* 29 U.S.C. § 152(3). Regulation of that part of the labor force is left to the states, and consequently, in 1972, the Arizona legislature enacted the Arizona Agricultural Employment Relations Act (Act). Ariz.Rev. Stat.Ann. §§ 23–1381 to –1395. Although the state courts are authorized to grant civil and criminal sanctions to ensure compliance with the substantive portions of the Act, *id.* §§ 23–1393 and 23–1392, the statute provides for the creation of the Arizona Agricultural Employment Relations Board (Board), *id.* § 23–1386, which is charged with initially effectuating most portions of the Act. The Board has a broad range of functions, including the authority to conduct inquiries about agricultural labor matters, make rules and regulations to effectuate the Act, make bargaining unit determinations, issue administrative orders directing elections, conduct representation hearings and elections, adjudicate unfair labor practice charges, and seek judicial enforcement of its orders. The Board thus exercis-

es integrated legislative, administrative, and adjudicatory functions, each of which is interwoven with the others. *See id.* §§ 23–1387 to –1389.

The members of the Board are appointed by the governor, the Act specifying the composition of the Board as follows:

> Two of the members shall be appointed as representatives of agriculture employers, two of the members appointed shall be representatives of organized agricultural labor and the three additional members ... shall be appointed as representatives of the general public.

Ariz.Rev.Stat.Ann. § 23–1386(B). The Act also provides for one alternate each for the employer and labor representatives, *id.* § 23–1386(C), and provides that four members constitute a quorum. *Id.* § 23–1386(E).

In 1980 the plaintiffs filed this action in the district court seeking a determination that the part of the Act establishing the tripartite Board was unconstitutional on its face and as applied. The district court, without an evidentiary hearing, dismissed the action for failure to state a claim upon which relief could be granted. The three judge panel of this court reversed the district court on the sole ground that the Act was facially unconstitutional because it mandated the appointment of a biased Board. At no time has the district court or the panel ruled on whether the Act is unconstitutional as applied.

The panel also determined that a previous challenge to the constitutionality of the Act by the United Farm Workers (UFW) was not a bar to this action. The prior action was filed in 1972 and was a broad based challenge to the constitutionality of the Act. The prior action, however, did not raise any challenge to any aspect of the composition of the Board. That litigation was resolved by the Supreme Court, which reversed the decision of a three-judge district court declaring the Act unconstitutional. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). The panel determined that *Babbitt* was not a bar to this lawsuit.

We need not decide whether that holding is correct because we reverse the panel on its substantive holding.

The plaintiffs contend that the composition of the Board is unconstitutional because two of its members are "appointed as representatives of agricultural employers." They argue that these members are biased against the UFW by virtue of their positions in the industry and that this bias deprives the UFW of an impartial tribunal before which its rights under the Act are determined. The plaintiffs further contend that the bias is not cured by the balance of two labor representatives on the Board. Had the legislature simply authorized the governor to appoint a seven-person board, the plaintiffs could not have challenged that method of composition, despite a greater possibility of actual bias. Instead, the legislature carefully balanced two interest groups, gave controlling votes to the public, and even provided for alternates in the event of a disqualification for interest. It is this very legislative effort to make the Board fair which leads the plaintiffs to allege that it is unfair.

The claim of facial unconstitutionality rests upon the theory that the impartiality required of adjudicatory decisionmakers cannot tolerate the presence of partisan members, even though partisan membership is balanced. However, the balancing of partisanship by use of both labor and management representatives is common in the labor field. F. Elkouri & E. Elkouri, *How Arbitration Works*, 81–87 (3d ed. 1979). The structure of this board is similar to the one which Congress established under the Railway Labor Act, 45 U.S.C. § 153, to decide labor disputes in the transportation field. In considering a challenge similar to that raised here, the Fifth Circuit has squarely held that the structure is not a facial violation of due process. *Del Casal v. Eastern Airlines*, 634 F.2d 295, 299 (5th Cir.1981). Plaintiffs here do not contend that balanced tripartite arbitration panels or wage/price boards are impermissible even though their members have a class interest in the decision being made. Rather, they argue that the Board is subject to heightened due process requirements precluding a balanced class structure because the Board performs quasi-adjudicatory functions. Plaintiffs, however, have not cited a single case in which it has been held that a consciously balanced tripartite board is inherently unfair, even in the context of adjudication.

We cannot accept plaintiffs' suggested analysis for it would have us make operational in this circuit, without any factual record whatsoever, a "rigid, artificial distinction between rule-making and adjudication." *Northern California Power Agency v. Morton*, 396 F.Supp. 1187, 1192 (D.D.C.1975), aff'd, 539 F.2d 243 (D.C.Cir. 1976). Such a distinction is not only difficult to make and to administer but is not a proper basis for determining disqualification for bias. K. Davis, 3 *Administrative Law Treatise* § 19.7 (2d ed. 1980). This is particularly true when the functions of the agency are varied and comprehensive. Due process should not depend upon this distinction but rather upon a specific and practical inquiry into the decisionmaking tasks of the Board and a factual analysis of how the challenged feature could render its decisionmaking process unfair. *See, e.g., Gibson v. Berryhill*, 411 U.S. 564, 578–79, 93 S.Ct. 1689, 1697–98, 36 L.Ed.2d 488 (1973); *NLRB v. Pittsburgh Steamship Co.*, 337 U.S. 656, 69 S.Ct. 1283, 93 L.Ed. 1602 (1949); K. Davis, 3 *Administrative Law Treatise* § 19.5 (2d ed. 1980).

The seminal cases on unconstitutional bias, *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), and *Dugan v. Ohio*, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928), remind us that due process is, in the classical phrase, "a flexible concept." *See, e.g., Landon v. Plasencia*, 459 U.S. 21, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances."); *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). Such a standard requires that review be based on a detailed, factual account of the procedures followed and of the interests

affected by the proceeding both in kind and in degree.

■ Arizona has clearly defined when a public officer must be disqualified for bias, and no distinction is made among the various functions which are performed by public officers or administrative agencies to determine bias. *See* Ariz.Rev.Stat.Ann. §§ 38–501 to –511. Section 503(B) provides that:

Any public officer or employee who has, or whose relative has, a substantial interest in any decision of a public agency shall make known such interest in the official records of such public agency and shall refrain from participating in any manner as an officer or employee in such decision.

Section 38–508 provides:

A. If the provisions of § 38–503 prevent an appointed public officer or a public employee from acting as required by law in his official capacity, such public officer or employee shall notify his superior authority of the conflicting interest. The superior authority may empower another to act or such authority may act in the capacity of the public officer or employee on the conflicting matter.

B. If the provisions of § 38–503 prevent a public agency from acting as required by law in its official capacity, such action shall not be prevented if members of the agency who have apparent conflicts make known their substantial interests in the official records of their public agency.

Thus, its conflict of interest statute pertains to *any* decision of a public agency and prohibits any *substantial* interest in any decision of the public agency.

■ Even if we were able to draw the distinction suggested by the plaintiffs, the alleged bias of the Board would not reach constitutional levels. The cornerstone of unconstitutional bias in the adjudicatory context, as set forth in *Tumey v. Ohio,* 273 U.S. at 535, 47 S.Ct. at 437, 445, 71 L.Ed. 749, is the existence of the decisionmaker's financial interest in the outcome of a case. The *Tumey* Court cautioned that not all allegations of bias reached constitutional dimensions:

All questions of judicial qualification may not involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion.

273 U.S. at 523, 47 S.Ct. at 441. Nothing in the Act which requires balanced representative interests of a class—employer, employee, and public—even remotely approaches the financial or personal interest which is constitutionally prohibited.

The position of the plaintiffs is similar to that rejected by the Court of Claims in *Overlook Nursing Home, Inc. v. United States,* 556 F.2d 500, 214 Ct.Cl. 60 (1977). There the plaintiff complained that the majority of a three-person medical appeals board were employees of an insurance company that acted as a Medicare intermediary and/or a private health insurer, and that therefore the Board was inherently biased. The plaintiff's theory was that the insurance company "would have an interest in similar issues where it would be itself the health insurer . . . and would wish to establish precedents unfavorable to providers." 556 F.2d at 502–03. As in that case, the plaintiffs here have relied on an argument of inherent bias without alleging any instance of actual bias or financial interest. Moreover, in both cases financial interest or responsibility is forbidden by statute or regulation. *Id.* at 503. *See also Friedman v. Rogers,* 440 U.S. 1, 18–19, 99 S.Ct. 887, 898–99, 59 L.Ed.2d 100 (1979). However, we repeat here the court's sentiment expressed there:

"Of course, we should be alert to the possibilities of bias that may lurk in the way particular procedures actually work in practice." *Withrow v. Larkin,* 421 U.S. [35] at 54, 95 S.Ct. [1456] at 1468 [43 L.Ed.2d 712 (1975) ]. But this plaintiff's theory is two [sic] conjectural and the character of the bias alleged too attenuated for us to agree that due process, a

flexible and practical concept by nature, was offended.

556 F.2d at 504.

At this stage of the proceedings, this case does not present a claim either that employers or employees (as distinguished from representatives of these two groups) should be barred by the due process clause from serving on the board because of their pecuniary interest, or that representatives should be barred by the due process requirement from participating in particular cases in which they have a direct pecuniary interest. Such matters, in any event, may not raise constitutional questions as they may be dealt with under the Arizona conflict of interest statute. *See* Ariz.Rev.Stat.Ann. § 38–503 (B). Indeed, it may be that the Arizona statute is stricter than the Supreme Court standard, and may prohibit the economic interest found not to be constitutionally disqualifying in *Dugan v. Ohio,* 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928) (a governing official's interest in the financial policy of his small town was too remote to violate due process).

■ The plaintiffs also contend that the Act, which permits the Board to act when there is a quorum of four, destroys the requirement of representative balance. The difficulty with this contention at this stage of the proceedings is that the record does not contain any facts which indicate that action adverse to the plaintiffs was ever taken by the Board with a quorum of only four. In fact, the plaintiffs in their response to the suggestion of hearing en banc allege that "[a]t best, it [the Board] is an ineffective, and virtually non-functioning body." As presented in these proceedings to date, the objection to the quorum of four is as academic as certain other challenges to the Act. *See Babbitt v. United Farm Workers National Union,* 442 U.S. at 303–05, 99 S.Ct. at 2311–12, 60 L.Ed.2d 895. In any given proceeding, action by four may not create the case or controversy found necessary by *Babbitt. Id.* at 297–99, 99 S.Ct. at 2308–09. In addition, action by only four members may be subject to interpretation by the Arizona courts that the quorum must be neutrally balanced.

In the final analysis, the provision for a quorum of four does not invalidate the Act on its face. Further proceedings before the panel, the district court, or the state courts are necessary in order to prepare a record on whether the provision is valid in practice. In this regard, the following statement of the Supreme Court, although written in a different context than the litigation here, is relevant:

> The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of . . . justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.

*United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974).

For the last decade various states have been attempting to deal with a newly organized agricultural work force. It is not surprising that a number of them should have augmented administrative experimentation with investigation, arbitration, rule making, and adjudication in the farm labor area, *see, e.g.,* Idaho Code §§ 22–4103 to –4111; Kansas Stat. Ann. § 44–820, as well as in other areas of labor law. *E.g.,* Hawaii Rev.Stat. § 377–2; Minn.Stat.Ann. § 179.-72.

The Arizona legislature has tried a reasonable experiment. It has combined a number of tasks in one body so that state policy in the agricultural employment area can develop rapidly and uniformly. By authorizing representation of competing groups, the legislature has attempted to have decisions in this complicated area made by knowledgeable people, thus reducing the risk of erroneous, unwise or uninformed decisions. By balancing these groups, it attempts to control the Board for bias. Whether the overall statute is the best that could have been devised is not for us to say. "The legislature being familiar with local conditions is, primarily, the judge

of the necessity of such enactments." *McLean v. Arkansas,* 211 U.S. 539, 547, 29 S.Ct. 206, 208, 53 L.Ed. 315 (1909). We sit only to determine whether the legislation is constitutional. The Arizona formulation is fair on its face and withstands attack.

The judgment of the district court holding that the Act is facially constitutional is affirmed and the panel opinion to the contrary is reversed. The case is remanded to the panel for determination of all other matters raised in this appeal.