762 P.2d 1365

**ARIZONA FARMWORKERS UNION, Plaintiff/Appellee,**

**v.**

**AGRICULTURAL EMPLOYMENT RELATIONS BOARD, an Arizona Administrative Agency, and Arizona Citrus Growers Association, an Unincorporated Association, Defendants/Appellants.**

**No. 2 CA–CV 88–0198.**

Court of Appeals of Arizona, Division 2, Department A.

Oct. 4, 1988.

Southern Arizona Legal Aid, Inc. by Nadine K. Wettstein, Tucson, for plaintiff/appellee.

Agricultural Employment Relations Bd. by K. Russell Romney and Thomas A. Peppler, Phoenix, for defendant/appellant Agricultural Employment Relations Bd.

Laws–Coats, P.C. by Jeffrey R. Finley and Laurie Laws–Coats, Phoenix, for defendant/appellant Arizona Citrus Growers Ass'n.

## OPINION

LIVERMORE, Presiding Judge.

This is an appeal from a decision of the superior court setting aside a decision of the Agricultural Employment Relations Board because two members of the Board had a conflict of interest and because the Board did not allow the Arizona Farmworkers Union to amend its complaint to allege an unfair labor practice by excluding union sympathizers in Mexico from participation in legal employment through the "H–2" program. We believe this disposition to be erroneous and reverse.

■ With respect to the claim that the Board erred in not allowing amendment of the complaint, the fact is that the primary thrust of the union's position at the extensive hearings was that Arizona Citrus Growers (ACG) engaged in an unfair labor practice by terminating farm labor contractors, some of whose employees were organized, instead hiring agricultural workers directly, and refusing to hire union members who had previously worked for the contractors. In the course of attempting to prove those charges, evidence was introduced that those hiring employees for ACG in Mexico excluded from consideration any potential employee known to be a union sympathizer. Whether or not that evidence was true was extensively debated in the post-hearing memoranda of the parties. In his initial decision, the trial examiner concluded that he was without jurisdiction to consider whether these practices in Mexico were unlawful because they were not raised in the amended complaint. Upon reconsideration in October 1984, however, the examiner recommended to the Board that the complaint be amended to include these new charges. He added:

Inasmuch as the claim referred to in Conclusion No. 2 above was not a part of the Complaint during the hearing of this matter and the evidence related thereto was only admitted insofar as it related to claims which were a part of the Complaint, a full hearing on this new claim has not been had and a new hearing must be set to resolve all factual questions relating to this new claim. Of course, the evidence already in the record will stand and form the basis for the General Counsel's and Intervenor's case on this new claim but the Respondent must be given an opportunity to present any evidence that it may want to present in defense of the claim.

The Board rejected this recommendation.

The narrow question raised by these facts is whether the Board abused its discretion in refusing to allow an amendment of the complaint where that amendment would require a reopening after April 1985 of the proceeding that had run from June 2 to August 26, 1983. In addressing this issue, we will assume that the test in Rule 15(b), Ariz.R.Civ.P., 16 A.R.S., is applicable, that an amendment should be freely granted if the issue has been tried with the express or the implied consent of the opposing party. We cannot, however, conclude that the issue was tried by consent in the face of the trial examiner's finding that the evidence was admitted solely as it related to the charges in the amended complaint. Those charges were that ACG refused to hire former workers who were union members; the primary defense was that none of those workers applied for jobs. In this context, while ACG would be dis-

posed to minimize any illegal discrimination in its activities under the H–2 program, it would not know that a violation could be premised on those activities and could rely on its primary defense, a defense the trial examiner found to be true. In these circumstances, a refusal to amend and to allow a reopening of the proceedings some twenty months after the hearings had concluded is not an abuse of discretion. *See Evans Products Co. v. West American Ins. Co.*, 736 F.2d 920 (3d Cir.1984); *Consolidated Data Terminals v. Applied Digital Data Systems, Inc.*, 708 F.2d 385 (9th Cir.1983); *Keeler v. Hewitt*, 697 F.2d 8 (1st Cir.1982); *Rio Rancho Estates, Inc. v. Beyerlein*, 662 F.2d 700 (10th Cir.1981); *Save Lake Washington v. Frank*, 641 F.2d 1330 (9th Cir.1981); 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1493 (1971).

■ The conflict of interest arises because two members of the Board participated in discussions although one of them, Al Lopez, was employed by a company that was a member of ACG, and the other, Stephen Martori, had a brother who testified in the hearing of this case. If the Code of Judicial Conduct Canon 3(C), Rule 81, Rules of the Supreme Court, 17A A.R.S., applied in this context we would agree that the two men should have disqualified themselves. However, because of the nature of the Arizona Agricultural Employment Relations Board it is clear that the Code does not apply. The Board is made up of two management representatives, two labor representatives, and three public members. It is a carefully crafted legislative effort to balance knowledgeable but interested representatives of labor and management and to give the balance of power to disinterested public members. *See United Farm Workers of America v. Arizona Agricultural Employment Relations Board*, 727 F.2d 1475 (9th Cir.1984). That balance ought not be easily upset by permitting challenges, motivated by the interest of the member that qualifies him to sit on the Board, asserting less substantial or chimerical conflicts of interest.

A.R.S. § 38–503(B) provides that "Any public officer or employee who has, or whose relative has, a substantial interest in any decision of a public agency ... shall refrain from participating in any manner as an officer or employee in such decision." "Substantial interest" is defined in A.R.S. § 38–502(11) as "any pecuniary or propriatary interest, either direct or indirect, other than a remote interest." A.R.S. § 38–502(10)(d) includes as a remote interest "that of a member of a non-profit cooperative marketing association." ACG is such an association.

■ Turning first to Al Lopez, we note that if the interest of his employer is remote and thus not disqualifying, his interest as an employee is even more remote. Second, it does not appear that Lopez would gain or lose financially from the decision in this case. It is true that if the union succeeded grower costs might rise, growing might be less profitable, and Lopez might earn less. That speculation, however, defines a contingent or remote interest. *See Yetman v. Naumann*, 16 Ariz.App. 314, 492 P.2d 1252 (1972). It also defines the management mind-set that qualifies one to sit on the Board and does not serve substantially to distinguish Lopez from any other management member. Finally, even if Lopez should be disqualified, he in fact disqualified himself and his only participation was to make a single factual observation that was immaterial to the issues to be decided. Any error, therefore, was harmless.[1]

■ The case of Stephen Martori is both easier and harder. His brother testified to the procedures that had to be followed to participate in the H–2 program. Martori stated that he had no financial involvement with his brother and would not disqualify himself. That Martori would not benefit personally is immaterial if his brother

---

1. The union's claim that Lopez had specific knowledge of the facts of this case, made as far as we can tell for the first time in its reply brief in superior court, presents a more substantial question. Had he not disqualified himself or had he participated in a substantial way, a due process violation might be present.

would. There is simply no evidence, however, that his brother had any financial interest in the case. Accordingly, disqualification is not mandated by the statute. It is troublesome, however, if a member of the Board could decide a disputed factual question on the basis of a relative's testimony. That could raise fairness questions amounting to a denial of due process. We need not reach this point because the brother's testimony was not contested and was irrelevant to the issues before the Board. Finally, Martori did not vote.

The judgment of the superior court is reversed and the matter is remanded for consideration of the other issues raised by the union.

ROLL and HOWARD, JJ., concur.