865 P.2d 107

Ambrose **SHEPHERD**, Louise Dennison and **Art Lee**, individually and in their capacities as Supervisors, and Apache County, a body politic, Plaintiffs/Counter-defendants/Appellees,

v.

Mitchel D. **PLATT**, Defendant/Counter-claimant/Appellant.

No. 2 CA–CV 93–0060.

Court of Appeals of Arizona, Division 2, Department A.

May 4, 1993.

Review Denied Jan. 19, 1994.

Stephen G. Udall, Apache County Atty., St. Johns, and Robert C. Ericson, Albuquerque, NM, for plaintiffs/counter-defendants/appellees.

Mangum, Wall, Stoops & Warden by Daniel J. Stoops, Flagstaff, for defendant/counter-claimant/appellant.

## OPINION

LACAGNINA, Presiding Judge.

In this case the trial court granted summary judgment in favor of Apache County and duly elected members of the board of supervisors, deciding they had the power to authorize the expenditure of funds from the county treasury for county functions performed in portions of Apache County located within the boundaries of the Navajo Indian Reservation. In addition, the trial court granted a motion to dismiss all counts of the counterclaim alleging all expenditures authorized by the board of supervisors were illegal, subjecting the individual members of the board to personal liability for said expenditures. We affirm the judgment of the trial court for the reasons hereafter stated, and based on the general proposition that citizens of the State of Arizona and residents of Apache County are entitled to the same benefits derived therefrom even though they are members of the Navajo Tribe and reside within the boundaries of the Navajo Indian Reservation. Therefore, the authorization for the expenditure of county funds for lawful county purposes without the borders of the Navajo Reservation, are lawful for county purposes within the reservation.

### FACTS

One-half of the territory of Apache County consists of property held in trust by the United States for the exclusive use of the Navajo, Apache and Zuni Indian tribes. Seventeen percent of the land is privately owned, and the remainder is owned by the State of Arizona and the United States. The county is divided into three districts, and the supervisors from each district also serve as members of the governing board of Apache County Flood Control District. Districts One and Two are totally within the boundaries of the Navajo Reservation. A portion of District Three is also located within the reservation. Since 1977, elected supervisors of Districts One and Two have been Navajo

Indians. Art Lee, a non-Indian named party, is the elected supervisor for District Three. Members of the board of supervisors from Districts One and Two have served as members of the Navajo Tribal Council or employees of the tribe during all or part of the time they served as supervisors.

Mitchel D. Platt is a licensed attorney who resides in Apache County and owns property assessed by the county for taxes. The board of supervisors has authorized expenditures for on-reservation county projects and travel expenses incurred by county employees such as the county manager, county attorney, engineer, school superintendent and others while performing their duties on the reservation.

### DISCUSSION

Platt argues that because Navajo Indians and the tribe are protected by federal laws, giving them certain immunities and jurisdiction within the boundaries of the reservation, the county does not have "exclusive jurisdiction" on the reservation. Therefore, he argues, all expenditures for county purposes on the reservation are illegal. We disagree with Platt's interpretation of A.R.S. § 11-201(A)(5), which allows the county to "levy and collect taxes for purposes under its exclusive jurisdiction as are authorized by law," cited to support this argument, because Apache County does have exclusive territorial jurisdiction *for county purposes* throughout Apache County. The extent of the state's jurisdiction over Indian reservations is clearly defined by the Arizona Supreme Court in *United States v. Superior Court in and for Maricopa County*, 144 Ariz. 265, 697 P.2d 658 (1985):

Article 20, ¶ 4, may be given full meaning by construing it, first, as a disclaimer of all rights to "Indian lands considered as property," *Porter v. Hall*, 34 Ariz. [308] at 321, 271 P. [411] at 415 [ (1928) ], and second, as an acknowledgement that federal law and policy are paramount on Indian reservations. Reservation lands "are within the political and governmental, as well as geographical boundaries of the state." *Id.* They are not immune from the reach of state governmental authority. Thus, by

the first clause of article 20, ¶ 4, the state waives any claim of right, title, or interest to Indian lands as property. By the second portion of ¶ 4, the state acknowledges Congress' superior right of disposition, jurisdiction, and control, but does not cede exclusive jurisdiction. Indian reservations remain politically and governmentally part of the state, and state law applies on the reservations, as does state process and procedure, so long as its application is consistent with the will of Congress. The basic test is set forth in *Williams v. Lee,* [358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) ]. State laws apply on reservations unless their application would impair rights granted, reserved, or protected by federal law or would interfere with tribal self-government. 358 U.S. at 219–20, 79 S.Ct. at 270–71.

144 Ariz. at 276, 697 P.2d at 667.

■ The exercise of county powers given by A.R.S. § 11–251 on the reservation is exclusive because the exercise thereof does not impair rights protected by federal law, nor does the exercise of county powers interfere with tribal self-government. The county's execution of intergovernmental contracts and agreements are also valid pursuant to A.R.S. §§ 11–951 to 11–954, including agreements with an Indian tribe defined as a "public agency" under § 11–951 for these purposes. The flood control agreements executed by the board of supervisors pursuant to A.R.S. §§ 48–3603(B) and (C)(9) are legally authorized by A.R.S. §§ 11–951 to 11–954 and include projects on the reservation. By the same reasoning, the authorization to establish and maintain justice courts within the county pursuant to A.R.S. §§ 11–601(2), 22–101 and 117(A) applies to creation of a justice court on the reservation.

■ In summary, Indian reservations located within the State of Arizona are within the sovereignty of the State of Arizona and are not excluded by the legislature from county political jurisdiction exercised for the benefit of all the residents of Apache County including Indian residents on the reservation so long as the exercise of those powers does not impair rights granted by federal law or interfere with tribal self-government. *Good-*

*luck v. Apache County,* 417 F.Supp. 13, 16 (D.C.Ariz.1975), *aff'd,* 429 U.S. 876, 97 S.Ct. 225, 50 L.Ed.2d 160 (1976); *United States v. Superior Court in and for Maricopa County, supra; Shirley v. Superior Court,* 109 Ariz. 510, 513 P.2d 939 (1973), *cert. denied,* 415 U.S. 917, 94 S.Ct. 1415, 39 L.Ed.2d 472 (1974); *Porter v. Hall,* 34 Ariz. 308, 271 P. 411 (1928). For the same reason, the trial court also correctly dismissed all of the counts of Platt's counterclaim alleging the illegality of specific expenditures by the board of supervisors for county purposes on Indian lands.

■ However, the claim that elected members of the board of supervisors who are Indian and serve on the Navajo Tribal Council or who are employed by the tribe are guilty of statutory or common law conflicts of interest when performing their duties as county supervisors needs further discussion. *Shirley v. Superior Court, supra.* Nothing in the record before us demonstrates that services provided by the Navajo Tribe to its members legally conflict with the services provided by Apache County to all of its residents, some of whom are tribal members. Neither governmental entity is subordinate to the other, and the performance by one person in two elected posts does not violate the common law doctrine of incompatibility unless the functions of the two offices are inconsistent or it is physically impossible to perform the duties of both offices. *Perkins v. Manning,* 59 Ariz. 60, 122 P.2d 857 (1942). The functions of both offices are not inconsistent, and it is physically possible to perform the duties of both offices in Apache County. *Davis v. Hale,* 96 Ariz. 219, 393 P.2d 912 (1964).

■ A statutory conflict exists within the meaning of A.R.S. §§ 38–501 to 38–511 when a public official has a substantial pecuniary or proprietary interest in one of his or her decisions. Pecuniary means money and proprietary means ownership. The record before us does not demonstrate that the Navajo supervisors receive more benefits from their decisions to authorize expenditures on the reservation than any other county resident living on the reservation. Any benefit

the supervisors receive as tribal employees is no greater than the benefits received by all other on-reservation constituents either directly or through county agreements with the tribal council. There is no evidence that the Navajo supervisors have any direct economic interest in the contractual relationships between the county and the Navajo Tribe, and at best, their interest and expenditures made for county residents on the reservation is remote and nonconflicting. A.R.S. §§ 38–502(10)(g) and (j). The reservation residents who are Navajos receive on-reservation public services on the same terms and conditions as other citizens and residents of Apache County. A.R.S. § 38–502(10)(g).

Finally, the Indian residents of Apache County are entitled to the same benefits as non-Indian residents, and the duly elected members of the board of supervisors do not act illegally when they exercise their powers and authorize expenditures to provide county services in the same manner on the reservation as off the reservation.

The judgment of the trial court is affirmed.

LIVERMORE, C.J., and ESPINOSA, J., concur.