SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| FRANK DOUGLAS HUGHES, | ) | Arizona Supreme Court |
| | ) | No. CV-01-0336-PR |
| Petitioner, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division Two |
| | ) | No. 2 CA-SA 01-0058 |
| HON. CINDY JORGENSON, JUDGE OF | ) | |
| THE SUPERIOR COURT OF THE STATE | ) | Graham County |
| OF ARIZONA, in and for the | ) | Superior Court |
| County of Pima, | ) | No. CR-2000-174 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| THE STATE OF ARIZONA, | ) | **O P I N I O N** |
| | ) | |
| Real Party in Interest. | ) | |
| ——————————————— | ) | |

Special Action from the Superior Court in Graham County

The Honorable Cindy Jorgenson, Judge

**REVERSED**

---

JANET A. NAPOLITANO, ARIZONA ATTORNEY GENERAL                Phoenix
        By   Randall M. Howe, Chief Counsel,
             Criminal Appeals Section
        and  John R. Evans, Assistant Attorney General         Tucson
Attorneys for Real Party In Interest

LAW OFFICES OF WALTER B. NASH, III, P.C.                      Tucson
        By   Walter B. Nash, III
        and  William J. Kirchner
Attorneys for Petitioner

---

**B E R C H**, Justice

¶1      We granted review to determine the appropriate interpretation of the term "substantial interest" as it is used in Arizona's conflict of interest statute, Ariz. Rev. Stat. ("A.R.S.") § 38-503 (2001). The question is whether the term encompasses

interests other than non-remote pecuniary or proprietary interests. We conclude that it does not.

## BACKGROUND

¶2        The question arises against the following background: While on traffic patrol on January 2, 2000, Graham County Deputy Sheriff Michael Kieffer stopped a speeding vehicle. The driver was "Jane Doe,"[1] the sister of Graham County Sheriff Frank Hughes (Petitioner). During the traffic stop, Deputy Kieffer saw what appeared to be drugs and drug paraphernalia in Jane Doe's car. She was agitated and belligerent during the stop, prompting Kieffer to call Hughes for assistance in calming her down. Sheriff Hughes arrived, calmed his sister, then told Kieffer that if he decided to arrest Doe, he should take her to the hospital first. Kieffer released Jane Doe to Hughes' custody, and Hughes took her to her home. Neither officer arrested her.

¶3        Later that evening, Deputy Kieffer asked Sheriff Hughes whether he should prepare a report of the incident. Hughes instructed Kieffer to await further instruction. The next day, Sheriff Hughes met with Undersheriff David Boyd and instructed him that all decisions regarding Jane Doe's case would be left to Boyd.

¶4        On January 14, 2000, Hughes asked Deputy Kieffer to prepare a report of the incident. After reviewing the report

---

        [1]    Because Jane Doe's identity, other than her relationship to Petitioner Frank Hughes, is not relevant to the case, we identify her only by a fictitious name.

approximately a week later, Hughes asked Kieffer to omit certain information and make some suggested editorial changes. Undersheriff Boyd, who was supervising the investigation, agreed with the decision to edit the report and with the edits themselves. The edited report includes relevant details of the traffic stop, but omits facts that could be considered irrelevant or personal.[2] Hughes asked Deputy Sheriff Glen Orr, who had also responded to the scene on January 2, to write a report. Finally, Hughes prepared his own report. All reports and evidence were given to Undersheriff Boyd.

¶5       Apparently, no charges resulting from the January 2 incident were ever brought against Jane Doe. However, the State charged Sheriff Hughes with obstructing a criminal prosecution, conducting a fraudulent scheme, and wilful concealment of evidence. *See* A.R.S. §§ 13-2409 (2001) (obstruction), 13-2311 (2001) (fraudulent scheme and concealment). Four months later, the State added an additional charge of conflict of interest, in violation of A.R.S. § 38-503(B).

¶6       At a preliminary hearing on October 20, 2000, the trial court found probable cause to believe that Hughes had committed the crimes charged. Hughes requested a new determination of probable cause regarding the conflict of interest charge, but the finding

---

[2]       We have reviewed both reports and a composite version showing the changes.

-3-

was affirmed following an evidentiary hearing before a different judge. The court of appeals declined jurisdiction of Hughes's special action.

**¶7** We granted review to determine whether the term "substantial interest" as it is used in A.R.S. § 38-508(B) (2001) encompasses Sheriff Hughes' conduct. *See* Ariz. Const. art. 6, § 5.3; ARCAP 23 (authorizing court's exercise of jurisdiction); *see also Paradigm Ins. Co. v. Langerman Law Offices*, 200 Ariz. 146, 147, ¶ 1, 24 P.3d 593, 594 (2001) (approving exercise of jurisdiction for questions of first impression and those that may have significant impact). We also granted review because, if convicted of the conflict of interest charge, the Sheriff will be required to resign his office. *See* A.R.S. § 38-510(B) (2001). The prosecution of all three charges has been stayed pending our decision here.

## DISCUSSION

**¶8** Arizona's conflict of interest statute precludes any public official who has a substantial interest in a public decision from participating in the decision-making process without making his interest known:

> Any public officer or employee who has, or whose relative has, a *substantial interest* in any decision of a public agency shall make known such interest in the official records of such public agency and shall refrain from participating in any manner as an officer or employee in such decision.

-4-

A.R.S. § 38-503(B) (emphasis added). A "substantial interest" is "any pecuniary or proprietary interest, either direct or indirect, other than a remote interest." A.R.S. § 38-502(11) (2001). Because we conclude that Hughes's interests here are not "substantial pecuniary or proprietary interests," we need not determine whether those interests are too remote to qualify under the statute.[3]

¶9     The State argues that Hughes's conduct falls within the ambit of the conflict of interest statute because both Hughes and his sister "had some financial interest to gain or lose by [Jane Doe's] arrest, incarceration, and prosecution for drug possession."[4] Hughes's pecuniary interest, the State asserts, is that the voters might refuse to vote for him if they thought that he had given special treatment to a family member. Jane Doe's asserted pecuniary interest is that her arrest and potential conviction on drug charges might result in economic loss to her: potential fines, possible forfeiture of property, and – if she were

---

[3]     The legislature has defined "remote interests" as those falling within any of several categories of interests, none of which is relevant to our determination here. A.R.S. § 38-502(10).

[4]     The State has apparently abandoned its claim that Jane Doe's liberty interest in avoiding incarceration is a "substantial interest" within the meaning of A.R.S. § 38-503. Whether the State abandoned the theory because a liberty interest is not a pecuniary or proprietary interest or because of the unlikelihood that Jane Doe would have been incarcerated even if convicted of simple drug possession is unclear, but is no longer important. *See* A.R.S. § 13-901.01 (2001) (requiring treatment and probation for first or second personal possession convictions).

employed – potential loss of employment and related benefits.

¶10     Hughes responds that these asserted interests are not "substantial interests" for purposes of the conflict of interest statute because they are neither pecuniary or proprietary nor are they direct.  Hughes points to the complete lack of evidence of any direct, non-speculative, non-contingent pecuniary or proprietary interests that either he or his sister had in his conduct.

¶11     In construing A.R.S. § 38-503(B), we must determine whether the legislature intended "substantial interest" to include the interests at stake in a possible criminal prosecution.  *See, e.g., UNUM Life Ins. Co. v. Craig*, 200 Ariz. 327, 329-30, ¶ 11, 26 P.3d 510, 512-13 (2001) ("The primary aim of statutory construction is to find and give effect to legislative intent.").[5]  Generally, if a statute is clear, we simply "apply it without using other means of construction," *id.* at 330, ¶ 12, 26 P.3d at 513, assuming that the legislature has said what it means.  When a statute is ambiguous or unclear, however, "we attempt to determine legislative intent by interpreting the statutory scheme as a whole and consider 'the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose.'" *Id.* (quoting *Aros v. Beneficial Ariz., Inc.*, 194 Ariz. 62, 66, 977 P.2d 784, 788

---

[5]     But intent must be objectively indicated or at least clearly manifested by the language of the statute.  We cannot be asked to guess at the legislature's subjective intent.  Stated succinctly, we must be able to reach our conclusion "by analysis of the statute instead of by psychoanalysis of [the legislature]." *United States v. Pub. Utils. Comm'n*, 345 U.S. 295, 319 (1953) (Jackson, J., concurring).

(1999)); *see also* A.R.S. § 1-213 (1994) ("Words and phrases shall be construed according to the common and approved use of the language.").

¶12     The conflict of interest statute at issue is unambiguous: Section 38-503(B), when read incorporating the definition in section 38-502(11), clearly reflects that substantial interests are non-remote pecuniary or proprietary interests.  The case law in this area confirms such an interpretation.

¶13     In *Yetman v. Naumann*, 16 Ariz. App. 314, 317, 492 P.2d 1252, 1255 (1972), for example, the court of appeals rejected a construction of "interest" that included "a mere abstract interest in the general subject or a mere possible contingent interest."  In finding the language of A.R.S. § 38-503 not impermissibly vague, the court reasoned that "the term [pecuniary interest] refers to a pecuniary or proprietary interest by which a person will gain or lose something[,] as contrasted to general sympathy, feeling or bias."  *Id.*  In the case now before us, the record does not show that Hughes stands to lose more than perhaps the votes of his constituents if the State proves that he interfered in his sister's case or if his sister is convicted of possession of drugs.

¶14     In *Shepherd v. Platt*, 177 Ariz. 63, 865 P.2d 107 (App. 1993), the court of appeals determined that Navajo tribal members who served as county supervisors had not violated the conflict of interest statute in their decisions regarding county expenditures on the Navajo Reservation.  Noting that a conflict exists within

-7-

the meaning of A.R.S. § 38-503 only "when a public official [or a relative] has a substantial pecuniary or proprietary interest in one of his or her decisions," *id.* at 65, 865 P.2d at 109, the court succinctly defined the terms at issue: "[p]ecuniary means money and proprietary means ownership." *Id.*

¶15 When facing a related issue in 1988, the court of appeals similarly concluded that a member of a state agricultural board who worked for a company that belonged to a lobbying group arguably affected by a board decision did not violate the conflict of interest statute. *See Arizona Farmworkers Union v. Agric. Employment Relations Bd.*, 158 Ariz. 411, 762 P.2d 1365 (App. 1988). In doing so, the court focused on the individual's interest in the decision: "[I]t does not appear that [the board member] would gain or lose financially from the decision in this case." *Id.* at 413, 762 P.2d at 1367. Speculation regarding the individual's interest, the *Farmworkers* court concluded, "defines a contingent or remote interest," which is not covered by the conflict of interest statute. *Id.*

¶16 These cases make clear that to violate the conflict of interest statute, a public official must have a non-speculative, non-remote pecuniary or proprietary interest in the decision at issue. The statutes require public officials to disclose potential conflicts and, in most instances, to then refrain from acting on issues on which the conflict exists. *See* A.R.S. § 38-503; *cf.* § 38-508(B) (allowing an official with an "apparent" conflict to act

-8-

under certain circumstances).

¶17        The trial court relied on dictum from *United Farm Workers v. Arizona Agricultural Employment Relations Board*, 727 F.2d 1475 (9th Cir. 1984), to support the finding of probable cause. Although the Ninth Circuit did state, in a non-criminal case, that the "conflict of interest statute pertains to *any* decision of a public agency and prohibits any *substantial* interest in any decision of the public agency," *id.* at 1478, it did so in dictum in a context far different from that in the case now before us. Rather than determining the contours of the definition of "substantial interest," the Ninth Circuit was deciding whether the Arizona Agricultural Employment Relations Board was unconstitutionally constituted because its membership consisted of members of management and members of "organized agricultural labor" – members who, the appellants there claimed, had a built-in "conflict of interest." The Ninth Circuit found that the board was constitutionally composed. It did not purport to determine the question now before this court.

¶18        The history of the statute also confirms that "substantial interest" refers to non-remote interests that are pecuniary or proprietary in nature. Most clearly supporting that construction of the term is a 1978 amendment that added the phrase "pecuniary or proprietary" to the definition of substantial interest. *See* A.R.S. § 38-502(11). The 1978 amendment also added language to the definition of "remote interest" that suggests that

the legislature was concerned only with economic conflicts of interest. A.R.S. § 38-502(10)(i) (non-remote interest must, among other things, "confer a direct economic benefit or detriment . . ."). Of lesser value in our determination are notes from committee hearings regarding the 1978 amendment suggesting that legislators were concerned with purely economic conflicts.

¶19    Finally, and dispositively, this court will not define the edges of meanings of terms in a statute in a criminal prosecution. *See United States v. Bass*, 404 U.S. 336, 347-49 (1971) (due process requires that ambiguities in criminal statutes be construed in favor of the defendant); *State v. Tarango*, 185 Ariz. 208, 210, 914 P.2d 1300, 1302 (1996) (if "statute is susceptible to more than one interpretation, . . . doubt should be resolved in favor of the defendant"), opinion adhered to on rehearing, *State v. Ariz. Dep't of Corrections*, 187 Ariz. 211, 928 P.2d 635 (1996). Should the legislature wish to expand the definition of pecuniary and proprietary interest to include liberty interests or remote or contingent interests, it may do so, within constitutional limits. But this court will not expand the definition of "conflict of interest" in a criminal prosecution to include conduct that does not clearly fall within the plain meaning of the statute under which the defendant is charged, as that meaning may be ascertained from the language of the statute, the interpretation of the statute by the courts of this state, or the statute's legislative history.

¶20     The State acknowledges that it did not present any evidence to the trial court of any direct, non-speculative economic benefits or detriments that faced either Hughes or his sister. The State's inability to direct the court to anything in the record showing a non-remote, non-speculative pecuniary impact on either Hughes or his sister dooms its case.

## CONCLUSION

¶21     The interests involved in this criminal prosecution do not fall within the scope of the conflict of interest statute. Absent any proof of non-remote pecuniary or proprietary interests, the trial court's finding of probable cause was in error. We therefore reverse the finding of probable cause, dismiss this charge against Hughes, and dissolve the stay granted on January 16, 2002.

_____
Rebecca White Berch, Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Ruth V. McGregor, Vice Chief Justice

_____
Stanley G. Feldman, Justice

_____
Thomas A. Zlaket, Justice (Retired)