IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



CITY OF TUCSON, a municipal
corporation,

    Plaintiff/Appellant/Cross-Appellee,

v.

CLEAR CHANNEL OUTDOOR, INC.,

    Defendant/Appellee/Cross-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

2 CA-CV 2007-0104
DEPARTMENT A

O P I N I O N

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20003722

Honorable Carmine Cornelio, Judge

AFFIRMED IN PART
REMANDED IN PART

Gabroy, Rollman & Bossé, P.C.
  By Richard M. Rollman and Richard A. Brown

Tucson
Attorneys for Plaintiff/Appellant/
Cross-Appellee

Quarles & Brady LLP
  By David A. Paige, Nicole France Stanton,
  and Deanna Conn

Phoenix
Tucson
Attorneys for Defendant/Appellee/
Cross-Appellant

Arizona Center for Law in the Public Interest
  By Joy Herr-Cardillo

Tucson
Attorney for Amici Curiae Scenic

H O W A R D, Presiding Judge.

¶1        In this municipal code enforcement action, appellee/cross-appellant Clear Channel Outdoor, Inc., challenges the trial court's rulings that the two-year limitations period provided in A.R.S. § 9-462.02(C) did not commence until appellant/cross-appellee City of Tucson actually discovered billboard violations and that billboards in violation of repealed ordinances at the time of repeal can be regulated under the current ordinances that replaced and abrogated prior ordinances.  Clear Channel also challenges those portions of the court's judgment, rendered after a bench trial, in favor of the City, requiring Clear Channel to remove five billboards found in violation of applicable City ordinances and to remediate three other billboards through relocation or face replacement.  Clear Channel further argues the court erred in concluding the addition of a second face to certain billboards was a violation of the applicable code and that it was an abuse of discretion to order removal of those billboards instead of remediation.

¶2        The City challenges those portions of the trial court's judgment that denied the City's request for removal of five billboards, including the three that the court ordered Clear Channel to remediate.  The City contends the court had no discretion to order anything other than removal.  In the alternative, the City argues that, if the court did have the discretion to order a different remedy, or no remedy at all, then it abused its discretion

2

in ordering anything other than removal of all five billboards. As explained more fully below, we affirm the judgment as to counts 36, 75, 80, 97, 102, 114, 116, and 117 and we remand as to counts 11 and 61 for further consideration by the trial court consistent with this opinion.

## Procedural Background

¶3       This case arises out of approximately twenty years of disputes between the City and Clear Channel or its predecessors regarding the regulation of billboards. *See City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, ¶¶ 2-8, 105 P.3d 1163, 1165-66 (2005) (describing some procedural history of dispute). The current appeal arises from a lawsuit first initiated in 2000 by the City against Clear Channel's predecessor. The City alleged violations involving over 170 billboards, with each billboard constituting a separate count. In order to make the litigation manageable, the trial court ordered the parties to select a small number of billboards representative of the various violations alleged. The court expressed the hope that, after the issues involving these billboards had been litigated, the parties would be more likely to reach a settlement regarding the remaining billboards. The ten billboards selected for trial were those associated with counts 11, 36, 61, 75, 80, 97, 102, 114, 116, and 117, in the City's complaint. After a series of mini-trials on these counts, the court entered final judgment ordering the following: removal of the billboards associated with counts 36, 80, 102, 116, and 117; relocation of the billboards associated with counts 11 and 61; and replacement of the face on the billboard associated with count 75. The court denied relief as to the billboards associated with counts 97 and 114.

3

**Discovery Standard under A.R.S. § 9-462.02(C)**

¶4   Clear Channel argues the trial court erred by determining that the two-year limitations period set forth in § 9-462.02(C) is triggered only when the City "actually discovers a violation involving an outdoor advertising use or structure zoning or sign code violation." Clear Channel argues the limitations period is triggered "when the City knew or, in the exercise of reasonable diligence, should have known of the facts underlying the purported violation."[1]

¶5   We review de novo questions of statutory interpretation and questions of law regarding statute of limitations defenses. *N. Valley Emergency Specialists, L.L.C. v. Santana*, 208 Ariz. 301, ¶ 8, 93 P.3d 501, 503 (2004); *Montaño v. Browning*, 202 Ariz.

---

[1]The trial court's ruling on this issue does not pertain directly to the ten billboards that are the subject of this appeal and we have subject matter jurisdiction only over the court's judgment, entered pursuant to Rule 54(b), Ariz. R. Civ. P., relating to these billboards. *See Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, n.1, 155 P.3d 1090, 1094 n.1 (App. 2007). Nevertheless, in supplemental briefing on this jurisdictional question, the parties urge us to decide the pure question of law relating to the statute of limitations because the issue is one of first impression and it is already recurring in the ongoing litigation below. Based on the unique facts of this case, the interests of judicial economy, and in light of the fact that we already have a valid appeal after a final judgment on the other issues in this case, we exercise special action jurisdiction over this issue to cure any potential defect in our appellate jurisdiction. *See Lloyd v. State Farm Mut. Auto. Ins. Co.*, 189 Ariz. 369, 374-75, 943 P.2d 729, 734-35 (App. 1996) (court of appeals exercises discretion to treat appeal as a petition for special action and accept special action jurisdiction where trial court improperly certified partial summary judgment pursuant to Rule 54(b), Ariz. R. Civ. P.); *see also State ex rel. Romley v. Martin*, 203 Ariz. 46, ¶ 4, 49 P.3d 1142, 1143 (App. 2002) ("Special action jurisdiction is appropriate in matters of statewide importance, issues of first impression, cases involving purely legal questions, or issues that are likely to arise again."), *aff'd*, 205 Ariz. 279, 69 P.3d 1000 (2003).

4

544, ¶ 4, 48 P.3d 494, 496 (App. 2002). The purpose of a statute of limitations is generally to "protect[] defendants and the courts from litigation of stale claims" for which evidence may be lost or the memories of witnesses faded. *Nolde v. Frankie*, 192 Ariz. 276, ¶ 12, 964 P.2d 477, 480 (1998). However, courts disfavor statute of limitations defenses, preferring instead to resolve litigation on the merits when possible. *See Montaño*, 202 Ariz. 544, ¶ 3, 48 P.3d at 496; *see also Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.*, 182 Ariz. 586, 590, 898 P.2d 964, 968 (1995).

¶6 If a statute of limitations question requires statutory interpretation, we must construe the statute so as to fulfill legislative intent. *See UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, ¶ 11, 26 P.3d 510, 512-13 (2001). When interpreting a statute, we look first to the plain language because that is "'the best and most reliable index of a statute's meaning.'" *N. Valley Emergency Specialists*, 208 Ariz. 301, ¶ 9, 93 P.3d at 503, *quoting State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). When the language of a statute is clear and unambiguous, a court should not look beyond the language, but rather "simply 'apply it without using other means of construction,' assuming that the legislature has said what it means." *Hughes v. Jorgenson*, 203 Ariz. 71, ¶ 11, 50 P.3d 821, 823 (2002), *quoting UNUM Life Ins.*, 200 Ariz. 327, ¶ 12, 26 P.3d at 513.

¶7 Section 9-462.02(C) provides that "[a] municipality must issue a citation and file an action involving an outdoor advertising use or structure zoning or sign code violation within two years after discovering the violation." The plain language, "after discovering,"

is clear and unambiguous. Nothing within the text of the statute suggests any legislative intent other than to begin the limitations period upon actual discovery of a violation.

¶8 Clear Channel asserts that the legislative intent in enacting § 9-462.02(C) was to "shorten the time in which the City could bring its claims" and argues that a plain meaning interpretation does not fulfill this intent. Clear Channel also cites the Arizona State Senate Fact Sheet for H.B. 2559, 44th Leg., 2d Reg. Sess. (Ariz. Mar. 7, 2000), the bill that became § 9-462.02(C), which states: "A statute of limitation is needed in this context in order to avoid a situation where a series of citations may be 'saved up' to be used as leverage to force a billboard company to remove billboards." Clear Channel asserts that to interpret the statute according to its plain language "would permit the City to extend its right to bring an action against a nonconforming billboard for an indefinite period of time, and defeat the very purpose of § 9-462.02(C)."

¶9 First, when statutory language is unambiguous, we do not look beyond it. *See Hughes*, 203 Ariz. 71, ¶ 11, 50 P.3d at 823. Moreover, before the enactment of § 9-462.02(C), there was no statutory time restriction on the City's ability to bring its claims. *See Clear Channel*, 209 Ariz. 544, ¶¶ 39-40, 105 P.3d at 1173. Construing the words "after discovering" in § 9-462.02(C) according to their plain meaning requires the City to file claims within two years of actual discovery of a violation and thus imposes a statutory time limit where none had previously existed. Therefore, by its clear and unambiguous terms, the statute fulfills the legislative intent of shortening the time by which the City must file its claims. And, contrary to Clear Channel's assertion, a plain meaning interpretation addresses

6

the concern expressed in the senate fact sheet. By mandating that claims be brought within two years of actual discovery, the statute precludes the City from saving up its claims over "an indefinite period of time" and exercising the feared leverage. The fact sheet therefore supports the City's rather than Clear Channel's position.

¶10 Clear Channel argues that § 9-462.02(C) should be interpreted to incorporate the "discovery rule" imposed in other areas of civil litigation with regard to accrual of a plaintiff's cause of action. Under the discovery rule, accrual of a cause of action occurs when the "plaintiff knows or, in the exercise of reasonable diligence, should know the facts underlying the cause." *Gust, Rosenfeld*, 182 Ariz. at 588, 898 P.2d at 966; *see also Vega v. Morris*, 184 Ariz. 461, 463, 910 P.2d 6, 8 (1996) (cause of action accrues when "plaintiff knows or reasonably should have known" of defendant's negligent conduct). As the City correctly observes, this case law was developed to interpret statute of limitations language that expressly requires a claim to be filed within a certain number of years "after the cause of action accrues." *See Gust, Rosenfeld*, 182 Ariz. at 588, 898 P.2d at 966 (interpreting A.R.S. § 12-548); *Sato v. Van Denburgh*, 123 Ariz. 225, 227, 599 P.2d 181, 183 (1979) (interpreting A.R.S. § 12-542); *see also Mayer v. Good Samaritan Hosp.*, 14 Ariz. App. 248, 252, 482 P.2d 497, 501 (1971) (discovery rule developed to address ambiguity of term "accrues"). Because the discovery rule is firmly established in the context of determining when a cause of action accrues for the purposes of a statutory limitations period, *see Sato*, 123 Ariz. at 227, 599 P.2d at 183, we assume that if the legislature had intended the

7

discovery rule to apply, it would have indicated that by using accrual language in § 9-462.02(C). But § 9-462.02(C) does not include any language about accrual.

¶11 Moreover, the legislature has on numerous occasions used the language "knew or should have known." *See, e.g.*, A.R.S. § 12-821.01(B) (with respect to claim against public entity or employee, "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause"); A.R.S. § 13-703(F)(10) (whether defendant "knew, or should have known," that murder victim was peace officer aggravating factor in sentencing); A.R.S. § 23-1062.01(C) (insurance carriers not responsible for payments on industrial claims unless claims received within twenty-four months of date on which "health care provider knew or should have known that service was rendered"); A.R.S. § 29-314(1) (damage recovery allowed for reliance on execution of limited partnership certificate containing false statement from "any general partner who knew or should have known" statement was false). We presume that if the legislature had meant for a "knew or should have known" standard to apply under § 9-462.02(C), it would have included such language in the text of the statute. *See Hughes*, 203 Ariz. 71, ¶ 11, 50 P.3d at 823 (court assumes legislature says what it means).

¶12 Clear Channel contends that a reasonable diligence requirement is a "universally accepted" discovery standard in the civil context regardless of whether it is included in the plain language of the statute, citing *Dicenso v. Bryant Air Conditioning Co.*, 131 Ariz. 605, 643 P.2d 701 (1982). But *Dicenso* involved a plaintiff who had filed his claim within the statutory limitations period—within four years after the cause of action

8

"accrued"—and then failed to serve the defendant or otherwise prosecute his claim until three years later. *Id.* at 606-07, 643 P.2d at 702-03. The court held that reasonable diligence in the prosecution of the action is an additional requirement. *Id.* at 607, 643 P.2d at 703. *Dicenso* therefore does not support the argument that reasonable diligence must be incorporated into the plain statutory language concerning discovery of the violation. Moreover, enforcement of a civil violation of an ordinance raises different policy considerations than a typical civil action. The prevalence of the discovery rule in a different context does not mandate that we engraft onto § 9-462.02(C) language that the legislature did not include.

¶13      Clear Channel also discusses case law from outside Arizona in support of its position. Clear Channel argues that because the statutory language "after discovering" is unique in Arizona's statutory scheme, we should examine how other jurisdictions have interpreted similar language. But as we stated above, when the statute is plain and unambiguous, we will not engage in any other method of statutory interpretation. *See N. Valley Emergency Specialists*, 208 Ariz. 301, ¶ 9, 93 P.3d at 503. Therefore, we need not consider the proffered case law from other jurisdictions.

¶14      Finally, Clear Channel argues that the billboard violations are "ascertainable with reasonable diligence" because billboards are by nature not concealed. It also argues that the City has an adequate remedy in that the other provisions of § 9-462.02 allow the City to condemn the nonconforming billboards or pay to have them relocated. Because we

9

must apply the plain meaning of the statute, neither of these observations, to the extent they are accurate, is relevant. *See Hughes*, 203 Ariz. 71, ¶ 11, 50 P.3d at 823.

¶15    The plain language of § 9-462.02(C) is unambiguous and we apply it as written. We therefore affirm the trial court's refusal to add a "should have known with reasonable diligence" standard to § 9-462.02(C).

**Repealed Ordinances**

¶16    Clear Channel next argues the trial court erred in permitting the City to use repealed ordinances as the basis for its allegation that certain billboards were not legally compliant. Clear Channel contends that, because no savings clause was enacted at the time of repeal, these ordinances ceased to exist and therefore Clear Channel cannot be prosecuted for violating them. We review a trial court's decision on a motion to dismiss for an abuse of discretion, but review issues of law de novo. *See Keenen v. Biles*, 199 Ariz. 266, ¶ 4, 17 P.3d 111, 112 (App. 2001); *see also Airfreight Express Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, ¶ 11, 158 P.3d 232, 236 (App. 2007).

¶17    Signs are regulated in the Tucson Code under chapter three, "Advertising and Outdoor Signs." The prior provisions of this chapter were repealed and replaced in 1980 by Ordinance 5102 and again in 1987 by Ordinance 6737.

¶18    Clear Channel moved to dismiss multiple counts, claiming the complaint alleged violations of ordinances that had been repealed and that the current ordinances could not be applied retroactively. In response, the City stated that the billboards violated the current ordinances and Clear Channel did not have vested rights based on

10

nonconforming use status because the billboards had also violated the previous ordinances.[2] For purposes of its motion, Clear Channel did not dispute that the billboards at issue were built in violation of ordinances existing at the time they were constructed and that they are now in violation of current ordinances.

¶19 Clear Channel's argument that the repealed ordinances cannot be enforced is irrelevant with respect to the billboards at issue in view of the City's present position that it is attempting to enforce the current ordinances, not the repealed ordinances. Therefore, we will not address the authorities Clear Channel cites in support of its claim that relates to the enforceability of repealed ordinances.[3]

¶20 Clear Channel further argues that the City is barred from enforcing the current ordinances against these billboards because the current ordinances did not exist when they were built and the current ordinances cannot apply retroactively. In determining when an ordinance is retroactively applicable, we apply the same general principles as we would

---

[2]Initially, the City also asserted it could enforce the repealed ordinances outright because they had been "substantially reenacted" and thus were not subject to the "consequences of a true repeal." The City subsequently abandoned this argument and does not raise it on appeal.

[3]At oral argument, Clear Channel argued that, as to some of the counts in the City's complaint, including the billboards at issue, the City alleged only violations of repealed ordinances and did not allege any violations of the current ordinances. Clear Channel argued that its theory regarding the enforceability of repealed ordinances is still applicable to these counts. But Clear Channel did not argue below or in its briefs that any deficiency in the City's pleadings could provide a basis for claims or defenses. Issues raised for the first time at oral argument are generally deemed untimely and waived. *See Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004). Therefore, we do not address this claimed deficiency in the City's pleadings.

when construing statutes. *See* 6 Eugene McQuillin, *The Law of Municipal Corporations* § 20.70, at 236 (3d ed. 1998). An ordinance is "not necessarily '"retroactive in application simply because it may relate to antecedent facts."'" *Garcia v. Browning*, 214 Ariz. 250, ¶ 12, 151 P.3d 533, 536 (2007), *quoting Aranda v. Indus. Comm'n*, 198 Ariz. 467, ¶ 24, 11 P.3d 1006, 1011 (2000), *quoting Tower Plaza Invs. Ltd. v. DeWitt*, 109 Ariz. 248, 250, 508 P.2d 324, 326 (1973). Rather, "legislation may not disturb vested substantive rights by retroactively changing the law that applies to completed events." *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, ¶ 15, 972 P.2d 179, 189 (1999).

**¶21** The current ordinances prohibit Clear Channel from maintaining a billboard that is not in compliance with their provisions. Tucson Code § 3-7 states that "[i]n the event any person should erect, alter, relocate, or *maintain* a sign in violation of the [sign code], it is declared a public nuisance; and the city attorney is authorized to bring an action . . . to enjoin such person from continuing the violation." (Emphasis added.) And relevant to this action, this section regulates the prospective "primary conduct" of maintaining an illegal sign, not the past "primary conduct" of construction or alteration of the sign prior to the adoption of the current code. *Garcia*, 214 Ariz. 250, ¶ 12, 151 P.3d at 536. Thus, the code is not retroactive because it does not change the legal effect of "antecedent acts." *Id.*

**¶22** Nevertheless, an impermissible retroactive application of the code would occur if the billboard owners had acquired vested rights based on the non-conforming use status of the billboards. The present ordinances would not be allowed to terminate such rights. "The critical inquiry in retroactivity analysis is not whether a[n ordinance] affects a

12

substantive right but whether a[n ordinance] affects a *vested* right. Thus the implicit meaning of the statement 'substantive rights may not be retroactively impaired' is 'substantive rights may not be impaired *once vested.*'" *Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 139-40, 717 P.2d 434, 443-44 (1986). A vested right "is actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust." *Id.* at 140, 717 P.2d at 444; *see also State v. Olvera*, 191 Ariz. 75, 77, 952 P.2d 313, 315 (App. 1997) (new regulation of conduct not void as ex post facto law even when right to engage in conduct dependent on behavior occurring prior to enactment of regulation).

¶23        The above principles are embodied in A.R.S. § 9-462.02, entitled, in part, "Nonconformance to regulations," on which Clear Channel also relies. *See Motel 6 Operating Ltd. P'ship v. City of Flagstaff*, 195 Ariz. 569, ¶ 8, 991 P.2d 272, 274 (App. 1999) (purpose of § 9-462.02(A) "'is to prevent the injustice of forcing retroactive compliance and the doubtful constitutionality of compelling immediate discontinuance of a nonconforming use'"), *quoting Gannett Outdoor Co. of Ariz. v. City of Mesa*, 159 Ariz. 459, 462, 768 P.2d 191, 194 (App. 1989). Section 9-462.02(A) states in pertinent part:

> Nothing in an ordinance or regulation authorized by this article shall affect existing property or the right to its continued use for the purpose used at the time the ordinance or regulation takes effect, nor to any reasonable repairs or alterations in buildings or property used for such existing purpose.

Thus, the statute and the cases protect legal nonconforming uses.

¶24 A nonconforming land use is a vested property right and is "defined as a lawful use maintained after the effective date of a zoning ordinance prohibiting such use." *Rotter v. Coconino County*, 169 Ariz. 269, 271, 818 P.2d 704, 706 (1991). But the law does not favor nonconforming uses because "they detract from the effectiveness of comprehensive land use regulation." *Rotter*, 169 Ariz. at 272, 818 P.2d at 707. Thus, despite the general rule that courts should "strictly construe" zoning ordinances in favor of an affected property owner, application of this rule to regulations governing nonconforming uses is precluded by the public policy encouraging the elimination of nonconforming uses. *Jones v. County of Coconino*, 201 Ariz. 368, ¶ 11, 35 P.3d 422, 425 (App. 2001). If a use is unlawful at the time a new ordinance takes effect, it does not qualify as a nonconforming use and is subject to the requirements of the new ordinance. *See Rotter*, 169 Ariz. at 271, 818 P.2d at 706 (defining nonconforming use as "lawful use"); *Town of Front Royal v. Martin Media*, 542 S.E.2d 373, 375-76 (Va. 2001) ("[F]or a prior use of land which violates a newly enacted zoning restriction to be considered a lawful nonconforming use, the use must have been 'a *lawful* use existing on the effective date of the [new] zoning restriction.'"), *quoting Knowlton v. Browning-Ferris Indus. of Va., Inc.*, 260 S.E.2d 232, 234 n.1 (Va. 1979) (emphasis added in *Front Royal*); 1 Kenneth H. Young, *Anderson's American Law of Zoning* § 6.01, at 481-82 (4th ed. 1996) (nonconforming use must be one that "lawfully existed prior to the enactment of a zoning ordinance").

¶25 Here, Clear Channel conceded that the billboards violated the relevant ordinances when they were erected as well as the current ordinance. The billboards

therefore did not have legal nonconforming use status when the current ordinances were enacted. Accordingly, Clear Channel did not have a "legal cause of action or defense" prior to the enactment of the new ordinance and consequently had no vested right to claim the billboards were legal nonconforming uses. *Hall*, 149 Ariz. at 140, 717 P.2d at 444. Under such circumstances, the City would be permitted to enforce the current ordinances with respect to those billboards. *See Front Royal*, 542 S.E.2d at 376-77.

¶26 Clear Channel implicitly argues that the term "use" in § 9-462.02(A) means any use, even an illegal use. We reject this interpretation of the statute because of the absurd results it would produce. We presume the legislature did not intend for § 9-462.02(A) to legitimize all existing illegal uses of property, nor did it intend to make such illegal uses immune from any future zoning regulation. *See In re Estate of Zaritsky*, 198 Ariz. 599, ¶ 11, 12 P.3d 1203, 1207 (App. 2000) (court presumes legislature does not intend absurd result).

### Addition of a Second Face

¶27 Clear Channel next claims the court erred in concluding that the addition of a second face to the billboards associated with counts 80, 102, 116, and 117 caused the billboards to lose their legal nonconforming use status under the applicable code. We review a trial court's legal conclusions de novo but will uphold any factual findings unless they are clearly erroneous. *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, ¶ 9, 156 P.3d 1149, 1152 (App. 2007).

**A. Count 80**

15

¶28 As Clear Channel acknowledged at oral argument, its factual recitation and legal theory regarding count 80 is inaccurate. Clear Channel constructs its argument on the premise that the trial court found the billboard associated with count 80 to be in violation because a second face had been added without a permit. But in its detailed minute entry ruling, the court found that, as to count 80, one billboard had originally been permitted but that billboard was subsequently "removed and replaced with another board in a significantly different location." The court further found that no permit existed for a billboard at the current location and also that a second face was added after relocation. The court ordered the sign removed based primarily on the fact that its *location* was a clear violation, although it acknowledged the fact that a second face had been added. Because Clear Channel fails to adequately develop an argument based on the actual facts underlying the court's order of removal, this issue regarding count 80 is waived. *See Jones v. Burk*, 164 Ariz. 595, 597, 795 P.2d 238, 240 (App. 1990) ("Issues not clearly raised and argued in a party's appellate brief constitute waiver of error on review."); *see also* Ariz. R. Civ. App. P. 13(a)(4) (statement of facts must be "relevant to the issues presented for review").

**B. Counts 102, 116, and 117**

¶29 As to the billboards associated with counts 102, 116, and 117, the trial court found that each billboard was a legal nonconforming sign when the new sign code ordinances took effect. Thereafter, a second face was added to each sign. The court determined this caused all three signs to lose their nonconforming status. Clear Channel

16

concedes it had added a second face to all three billboards but argues this was permissible under the applicable code.

¶30        There is some dispute over which code was applicable to which billboards when altered.[4] The versions of the sign codes at issue include the one adopted February 4, 1980 (1980 Code) and the one adopted July 6, 1987 (1987 Code). Because we conclude that, under either sign code, adding a second face would result in the loss of nonconforming status, we need not determine which code applies to which billboards.

¶31        The common law on nonconforming uses generally disfavors expansion or enlargement of the use as contrary to the "spirit underlying zoning[, which] is to restrict rather than to increase nonconforming uses." *Rotter*, 169 Ariz. at 277, 818 P.2d at 712 (emphasis omitted), *quoting Mueller v. City of Phoenix*, 102 Ariz. 575, 585, 435 P.2d 472, 482 (1967) (Struckmeyer, J., dissenting). And § 9-462.02 protects "only existing property, i.e., property which remains unchanged or receives only reasonable repairs or alterations. It does not protect new or additional construction to that property." *Circle K Corp. v. City of Mesa*, 166 Ariz. 464, 467, 803 P.2d 457, 460 (App. 1990). In order to support the public policy of eliminating nonconforming uses, courts do not follow the customary rule of construing zoning regulations in favor of property owners. *See Jones*, 201 Ariz. 368, ¶ 11, 35 P.3d at 425.

---

[4]With respect to count 116, the City also contends that about fifteen years after the addition of a second face, Clear Channel replaced the entire billboard without a permit. Because we affirm the trial court's decision on the basis of its undisputed findings regarding the second face, we do not address the City's contention regarding replacement.

¶32　　　　The City ordinances cannot eliminate rights granted under § 9-462.02. *See Rotter*, 169 Ariz. at 272, 818 P.2d at 707. But they could lawfully be more lenient to Clear Channel than required by § 9-462.02 in defining a nonconforming use. We therefore will analyze the ordinances to determine how they define a nonconforming use.

¶33　　　　Because our resolution of this issue requires interpretation of an ordinance, we treat it as a question of law and, as previously stated, apply the same general rules and principles as when interpreting a statute. *See Abbott v. City of Tempe*, 129 Ariz. 273, 275, 630 P.2d 569, 571 (App. 1981). Our primary objective is to determine the enacting body's intent "by considering the ordinance as a whole and giving harmonious effect to all of its sections." *Douglass v. Gendron*, 199 Ariz. 593, ¶ 10, 20 P.3d 1174, 1177 (App. 2001). "[W]e consider the words, context, subject matter, effects and consequences, spirit and reason of the law, and other acts *in pari materia*." *Kahn v. Thompson*, 185 Ariz. 408, 412, 916 P.2d 1124, 1128 (App. 1995); *see also* 8 McQuillin, *supra*, § 25.71, at 228 ("Ambiguous terms, or words susceptible of double meanings, should be read in the sense best suited to effectuate the policy of the zoning laws.") (footnote omitted). When interpreting a term, "'we apply a practical and commonsensical construction.'" *Douglass*, 199 Ariz. 593, ¶ 10, 20 P.3d at 1177, *quoting State v. Alawy*, 198 Ariz. 363, ¶ 8, 9 P.3d 1102, 1104 (App. 2000); *see also Abbott*, 129 Ariz. at 275, 630 P.2d at 571 ("[T]he court will adopt the interpretation that is reasonable."). We avoid an interpretation that makes "any language superfluous or redundant." *Thomas & King, Inc. v. City of Phoenix*, 208 Ariz. 203, ¶ 9, 92 P.3d 429, 432 (App. 2004). When a word is not defined in the ordinance

18

or in any statute, we generally "refer to a widely used dictionary to determine its meaning." *Files v. Bernal*, 200 Ariz. 64, ¶ 5, 22 P.3d 57, 59 (App. 2001).

**1. The 1980 Code**

¶34      The 1980 Code provided that a legally nonconforming sign would lose its nonconforming status if it was altered and thereafter failed to comply with all current provisions of the code. Ordinance 5102 §§ 3-6(13) and 3-81 (1980). Section 3-81 defined "alteration" as "any structural change or structural alteration of the sign." Section 3-6(25) defined "structural change" as occurring when "the cost of repair or restoration of any sign exceeds 50% of the valuation shown on the permit originally issued for the sign. Structural change also includes replacement of 50% or more of the existing sign structure." We conclude that the addition of a second face cannot reasonably be considered a "repair," "restoration," or "replacement" and thus does not constitute a "structural change."

¶35      We must therefore determine whether the addition of a new face constitutes a "structural alteration." § 3-81. The code does not define this term. Our task is complicated by the fact that A.R.S. § 9-462.02(A) allows "any reasonable . . . alterations in buildings or property used for such existing purpose" without the loss of nonconforming use status. Therefore, "structural alteration" in the ordinance must mean something more than "reasonable alteration" in order to avoid an impermissible conflict with the statute. *See Rotter*, 169 Ariz. at 272-73, 818 P.2d at 707-08.

¶36      The term "structural alteration" must also mean something different than "structural change," in order to avoid having "superfluous or redundant" language. *Thomas*

19

*& King*, 208 Ariz. 203, ¶ 9, 92 P.3d at 432. But the word "structural" cannot mean two different things in the same sentence of an ordinance. Thus, we conclude the most sensible way to construe "structural" for the purposes of "structural alteration" is in a manner parallel to the definition of "structural" for the purposes of "structural change." That is, a "structural alteration" occurs when "the cost of [alteration] of any sign exceeds 50% of the valuation shown on the permit originally issued for the sign. Structural [alteration] also includes [alteration] of 50% or more of the existing sign structure." Ordinance 5102 § 3-6(25) (1980). By using the fifty percent limitation to denote a "structural" event, in defining both "structural change" and "structural alteration," the ordinance maintains internal consistency.

¶37     However, we must still determine the meaning of the word "alteration." The code uses the word "alteration" as part of the definition of "structural alteration," *see* § 3-81, and provides no other express, relevant definitions. We must therefore determine the difference between "alteration" and "change," as used in the 1980 Code, in order to ascertain the code's definition of "structural alteration."

¶38     *The American Heritage Dictionary* 99 (2d college ed. 1985) defines "alter" as "[t]o change or make different; modify." Because the term "alteration" is used distinctly from the term "change" in the code, *see* § 3-81, and because "change" is defined in the code as a repair, restoration, or replacement, *see* § 3-6(25), we must conclude that an "alteration" incorporates any modification or difference other than a repair, restoration, or replacement. Using this definition, the addition of a second face is clearly an alteration. Such alteration

20

is structural under the code either if it costs more than fifty percent of the original value of the sign or if it affects fifty percent or more of the sign's structure. We further conclude that the ordinance as so construed does not violate A.R.S. § 9-462.02(A) because a structural modification that exceeds this code's restrictions would not constitute a "reasonable alteration." *See City of Tucson v. Whiteco Metrocom, Inc.*, 194 Ariz. 390, ¶¶ 29-30, 983 P.2d 759, 767 (App. 1999).

¶39 The City argues that it was Clear Channel's burden, as the property owner, to show it had met the conditions of nonconforming status. Although no Arizona case has expressly discussed which party has the burden in this context, we agree it rests with the property owner. A municipality is empowered by state statute to enact and enforce zoning ordinances, and the legislative intent is for these ordinances to be comprehensive. *See Gannett Outdoor Co.*, 159 Ariz. at 461, 768 P.2d at 193. While the municipality has the initial burden of showing the property is in violation of the current code, the property owner can avoid enforcement of the current code if it shows it has satisfied the municipality's regulations regarding nonconforming uses. *See* ¶¶ 23-24, *supra*. Thus, the assertion that property is a nonconforming use constitutes an affirmative defense. *See Black, Robertshaw, Frederick, Copple & Wright, P.C. v. United States*, 130 Ariz. 110, 114, 634 P.2d 398, 402 (App. 1981) (confession and avoidance an affirmative defense). As with affirmative defenses generally, the party asserting the defense "has the burden of pleading and proving it." *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 213 Ariz. 83, ¶ 21, 138 P.3d 1210, 1216 (App. 2006). The City also points out that placing on the property owner the

burden of proof with regard to nonconforming status is consistent with numerous other jurisdictions. *See, e.g., Parish of Jefferson v. Chamel*, 591 So. 2d 796, 799 (La. Ct. App. 1991); *Town of Levant v. Seymour*, 855 A.2d 1159, ¶ 19 (Me. 2004); *Village of Cottleville v. Star Concrete Co.*, 764 S.W.2d 651, 652-53 (Mo. Ct. App. 1988); *Wooster v. Entm't One, Inc.*, 814 N.E.2d 521, ¶ 48 (Ohio Ct. App. 2004); *Town of Front Royal v. Martin Media*, 542 S.E.2d 373, 376 (Va. 2001).

¶40 Therefore, Clear Channel had the burden of proving the cost of the alteration—adding a second face—was fifty percent or less of the value on the original permit and that it involved modifying less than fifty percent of the overall sign structure. Clear Channel has not directed us to any evidence presented at trial regarding the costs incurred in adding a second face to any of the billboards in question in relation to the original value on the permit nor what percentage of the sign structure is affected by the addition of a second face.[5] In the absence of such evidence, Clear Channel has failed to meet its burden of proving the billboards are lawful, nonconforming signs.

¶41 We further note that adding a second face to a billboard appears inconsistent with the common law prohibition on expansion of nonconforming uses and the public policy goal of eliminating such uses. *See Rotter*, 169 Ariz. at 276-77, 818 P.2d at 711-12; *Jones*,

_____

[5]Clear Channel argues that "adding a second face necessarily involves a change of less than 50% of the existing sign structure (because of supporting structural posts and footings which are the bulk of the expense)." But this argument conflates two alternative parts of the definition of structural alteration; (1) when the cost of alteration exceeds fifty percent of the original value *or* (2) when the alteration affects fifty percent or more of the structure. Clear Channel had to show that adding a second face did not violate either of these conditions; but as noted above, it failed to do so.

201 Ariz. 368, ¶ 11, 35 P.3d at 425. As the trial court noted in its ruling on count 117, the addition of a second face "essentially 'doubled the usage'" of the billboard. In a case involving one of Clear Channel's predecessors, this court observed in dicta that "adding [a] second face to the billboard was an impermissible expansion of the nonconforming use." *Whiteco Metrocom*, 194 Ariz. 390, ¶ 18, 983 P.2d at 764. Such an interpretation is the most likely to effectuate the legislative intent to provide "comprehensive regulations" of outdoor signs. Ordinance 5102 § 3-2; *see also* 8 McQuillin, *supra*, § 25.71, at 228 (ambiguous terms should be interpreted to support policy goals of zoning law).

## 2. The 1987 Code

¶42        The sign code in effect after July 1987 provided that a nonconforming sign may not be "moved, altered, removed and reinstalled, or replaced." Ordinance 6737 § 3-91 (1987). As discussed, the addition of a second face cannot reasonably be construed as moving, removing, reinstalling, or replacing a sign. The only remaining provision that could encompass the addition of a second face is the term "altered." Ordinance 6737 § 3-15(A) defined "alter" as "[t]o change, modify or vary a sign structure without constructing a totally new sign structure." This definition of "alter" is almost identical to *The American Heritage Dictionary* 99 (2d college ed. 1985) definition cited above and, as we concluded above, adding a second face involves altering a sign structure.

¶43        Clear Channel suggests that the term "sign structure," as opposed to sign, refers only to the beams and supports and not to the face panels. Clear Channel does not direct us to anything in the ordinance to support this interpretation. And at trial, a

23

construction worker employed by Clear Channel testified that face panels are constructed out of either wood or metal. He confirmed that adding a new face meant adding an "entirely new portion of the billboard," on which additional advertising copy could be displayed. The worker also confirmed that "additional construction . . . occurs in order to accommodate that advertising copy." This testimony factually refutes the assertion that a "sign structure" does not encompass the face panels. We conclude that adding a new face is an alteration of the "sign structure" and was therefore prohibited under the 1987 code.

¶44　　　Clear Channel argues, however, that to construe the code as prohibiting any kind of alteration would impermissibly conflict with A.R.S. § 9-462.02(A), which protects an owner's right to make "reasonable repairs or alterations" to nonconforming property. "[S]tatutes and ordinances that are in apparent conflict must be construed, if possible, to give full force and effect to each." *See Rotter*, 169 Ariz. at 273, 818 P.2d at 708. Therefore, we will construe "reasonable alterations" as being exempt from the 1987 Code's prohibition of alterations to nonconforming signs. But the addition of a second face to a single-faced sign cannot be considered a "reasonable alteration" within the meaning of the statute, since it effectively expands the use of the billboard by one hundred percent. *See id.* at 276, 818 P.2d at 711 ("[S]tatutory provisions regarding the expansion . . . of nonconforming uses should be read narrowly. . . .").

¶45　　　Finally, the City observes that, under all versions of the code, a permit has always been required to "erect, reinstall, alter, repair, or relocate a billboard." *See* Tucson Code § 3-19; Ordinance 6737 § 3-19 (1987); Ordinance 5102 § 3-11 (1980); Ordinance

2890 § 3-117 (1966). Therefore, the City argues, a permit has always been required to add a second face, because such addition would alter the billboard. And the addition of a second face without a permit would be illegal, causing the billboard to lose its nonconforming status. Clear Channel contends that because the permit fees did not vary based on the number of faces, a permit was not required to construct a second face.

**¶46** We find the City's argument more persuasive in light of Clear Channel's concession that the original permits for all three billboards at issue specified when they authorized two faces. And as the City points out, the code has always provided that, if the work authorized by a permit is suspended or abandoned, the permit will expire within a certain number of days. *See* Tucson Code § 3-22(D); Ordinance 6737 § 3-22(D) (1987); Ordinance 5102 § 3-14 (1980); Ordinance 2890 § 3-138 (1966). Upon expiration, a new permit has always been required to complete any remaining construction of the sign. Clear Channel concedes that, with respect to the permit for count 117, which authorized the construction of a billboard with two faces, the second face was not added before that permit expired. As for the billboards associated with counts 102 and 116, Clear Channel concedes that the original permit for each did not authorize a second face and does not argue a new permit was ever obtained authorizing the construction of a second face. Thus, the addition of a second face on these three billboards was illegal and caused the billboards to lose nonconforming status.

**¶47** Given the common law and public policy relating to nonconforming uses, *see Rotter*, 169 Ariz. at 276-77, 818 P.2d at 711-12; *Jones*, 201 Ariz. 368, ¶ 11, 35 P.3d at 425,

25

and given the clear legislative goal to restrict nonconforming signs in both the 1980 and 1987 codes, *see* Ordinance 5102 § 3-81 (1980); Ordinance 6737 § 3-91 (1987), we conclude that an interpretation permitting a nonconforming billboard owner to double the usage of that billboard defies both legislative intent and common sense. As previously noted, we will not construe legislation in a way that produces absurd results. *See In re Estate of Zaritsky*, 198 Ariz. 599, ¶ 11, 12 P.3d 1203, 1207 (App. 2000); 6 McQuillin, *supra*, § 25.71, at 228 (ambiguous terms should be interpreted to support policy goals of zoning law).

**¶48**    Based on the foregoing, we conclude that, under both the 1980 Code and the 1987 Code, the addition of a second face to the billboards associated with counts 102, 116, and 117 was prohibited and resulted in the loss of nonconforming use status.

## Trial Court's Discretion to Fashion a Remedy

**¶49**    In its appeal, the City contends the trial court erred in concluding it had the discretion to determine the proper remedy when it found a violation. Accordingly, the City argues the court erred in ordering any remedy other than removal for all billboards found in violation of the code.

**¶50**    This issue requires us to determine how statutes and ordinances interact with general principles of equity. This is a legal issue that we review de novo. *See Home Builders Ass'n of Cent. Ariz. v. City of Maricopa*, 215 Ariz. 146, ¶ 6, 158 P.3d 869, 872 (App. 2007) (statutory interpretation reviewed de novo); *Speros v. Yu*, 207 Ariz. 153, ¶ 11, 83 P.3d 1094, 1097 (App. 2004) (interpretation of ordinance reviewed de novo); *cf.*

26

*McCloud v. State*, 217 Ariz. 82, ¶ 10, 170 P.3d 691, 695 (App. 2007) (when trial court denies equitable tolling because it believes it is required to do so by law, standard of review de novo).

**¶51** "An injunction is an equitable remedy, which allows the court to structure the remedy so as to promote equity between the parties. The discretion in injunctive proceedings lies with the trial court, not the reviewing court." *Scholten v. Blackhawk Partners*, 184 Ariz. 326, 331, 909 P.2d 393, 398 (App. 1995). In *Whiteco Metrocom*, this court applied that general principle where the trial court, instead of ordering removal of a billboard, had ordered removal of the second advertising face of the billboard, "thereby restoring the billboard to its nonconforming use configuration." 194 Ariz. 390, ¶¶ 15, 18, 983 P.2d at 764. We noted that nothing in the relevant statute or the Tucson Code prohibited that action, and deferred "to the trial court's discretion in fashioning a remedy." *Id.* ¶ 19.

**¶52** The City agrees that its argument in this case "appears somewhat inconsistent" with *Whiteco Metrocom*, but nevertheless argues that this court "apparently did not consider [Tucson Code] § 3-102(A)" in *Whiteco Metrocom*. The City contends the billboards at issue here are "illegal signs" under Tucson Code § 3-101, and § 3-102(A) therefore requires that they be removed or brought into compliance with the current code. It further contends the billboards cannot be brought into compliance, so the only remedy available was removal.

27

¶53 Even assuming the ordinances support the City's position, unless a billboard is a nuisance per se, the City council cannot force the superior court to take actions that the court finds inequitable. Our supreme court has held that the failure to enjoin a nuisance per se is an error of law. *State ex rel. Sullivan v. Phoenix Sav. Bank & Trust Co.*, 68 Ariz. 42, 46, 198 P.2d 1018, 1020 (1948). "A nuisance per se or at law is '[a]n act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings.'" *Mutschler v. City of Phoenix*, 212 Ariz. 160, n.7, 129 P.3d 71, 76 n.7 (App. 2006), *quoting Black's Law Dictionary* 962 (5th ed. 1979) (alteration in *Mutschler*). In view of that definition, billboards that violate the City's ordinances are not nuisances per se.

¶54 The supreme court has further stated that trial courts have discretion in fashioning a remedy in other public nuisance cases. *See Armory Park Neighborhhood Ass'n v. Episcopal Cmty. Servs. in Ariz.*, 148 Ariz. 1, 10, 712 P.2d 914, 923 (1985); *Spur Indus., Inc. v. Del E. Webb Dev. Co.*, 108 Ariz. 178, 183-84, 494 P.2d 700, 705-06 (1972). Billboards that violate City ordinances are declared public nuisances in Tucson Code § 3-7 and so, based on these cases, the superior court would have discretion in fashioning a remedy for a billboard that violates the sign code.

¶55 That result is in accord with the result reached by a majority of courts that have considered whether a trial court may balance the equities in deciding whether to enjoin

a zoning violation.[6]  Although some courts have reached the opposite conclusion,[7] the

---

[6]*See, e.g., Bauer v. Waste Mgmt. of Conn., Inc.*, 686 A.2d 481, 489 (Conn. 1996) ("In an action brought by a zoning enforcement officer to enforce zoning regulations, the granting of injunctive relief rests within the trial court's sound discretion."); *Kauai County v. Pac. Standard Life Ins. Co.*, 653 P.2d 766, 781 n.22 (Haw. 1982) (in dictum, noting injunctive relief for unintentional zoning violation only appropriate "where the waste engendered by the destruction of a completed improvement is clearly justified by preservation of the interests protected by the zoning involved"); *County of Kendall v. Rosenwinkel*, 818 N.E.2d 425, 434-35 (Ill. App. Ct. 2004) (when zoning violation unintentional, court must balance equities before granting injunctive relief); *Kosciusko County Bd. of Zoning Appeals v. Wygant*, 644 N.E.2d 112, 114-15 (Ind. 1994) (although concluding denial of injunctive relief  abuse of discretion, "hesitat[ing] to establish a rule requiring the issuance of an injunction, since such rules tend to undermine the discretionary nature of equitable remedies"); *Ferris v. City of Las Vegas*, 620 P.2d 864, 865-66 (Nev. 1980) (although injunctive relief appropriate to restrain zoning violation, "[t]he granting, refusing or dissolving of injunctions is a matter of discretion"); *Swan Creek Twp. v. Wylie & Sons Landscaping*, 859 N.E.2d 566, ¶ 23 (Ohio Ct. App. 2006) ("Once a violation [of a zoning ordinance] is established, the decision of whether to grant or deny injunctive relief rests in the sound discretion of the court."); *City of Dallas v. Gaechter*, 524 S.W.2d 400, 402 (Tex. Civ. App. 1975) (statute authorizing local authority to institute action to restrain violation "[did] not remove all discretion from the trial court with respect to issuance of a mandatory injunction to enforce a zoning ordinance"); *Salt Lake County v. Kartchner*, 552 P.2d 136, 138-39 (Utah 1976) ("An injunction will be denied where the granting of it would be inconsistent with basic principles of justice and equity, even though it is within the scope of relief available in equity courts to enjoin violations of zoning laws."); *Fenwick v. City of Burlington*, 708 A.2d 561, 564-65 (Vt. 1997) (trial court had "wide discretion" in deciding whether to enjoin zoning violation); *Forest County v. Goode*, 579 N.W.2d 715, ¶¶ 12, 54-55 (Wis. 1998) (statute that provided local authority "may" seek injunctive relief "[did] not eliminate the traditional equitable power of the [trial] court"); *Bd. of County Comm'rs of Teton County, Wyo. v. Crow*, 131 P.3d 988, ¶¶ 8-11, 16 (Wyo. 2006) (where statute permitted enforcement of zoning resolution by abatement, trial court "invested with a measure of discretion" and "required to make specific findings balancing the equities"); *see also* 4 Kenneth H. Young, *Anderson's American Law of Zoning* § 29.03, at 688 (4th ed. 1997) ("As an injunction is granted, if at all, in the exercise of equity powers, courts will not grant an injunction which is broader than necessary, or which will, in the view of the court, work an injustice."); 83 Am. Jur. 2d *Zoning & Planning* § 981 (2003) ("Although a mandatory injunction is within the scope of relief available to remedy the violation of a zoning ordinance, the grant or denial of such a harsh remedy is in the sound discretion of

majority rule is consistent with *Spur Industries*, *Armory Park*, and *Whiteco Metrocom*, and recognizes the discretion traditionally afforded trial courts in proceedings for injunctive relief. *See Scholten*, 184 Ariz. at 331, 909 P.2d at 398. Accordingly, we conclude that, in a proceeding in equity to enforce a zoning ordinance against billboards, the trial court has discretion in fashioning a remedy.

**¶56**     The City cites *Arizona State Board of Dental Examiners v. Hyder*, 114 Ariz. 544, 562 P.2d 717 (1977), in support of its argument that the trial court had no discretion to order any remedy other than removal. In *Hyder*, the Arizona State Board of Dental Examiners had sought to enjoin two parties from practicing dentistry without a license. *Id.* at 545, 562 P.2d at 718. The trial court found that the parties had not been practicing dentistry and refused to enjoin their conduct. *Id.* Our supreme court noted the "overwhelming and uncontradicted" evidence that the parties had been practicing dentistry. *Id.* at 546, 562 P.2d at 719. It then addressed whether the Board should have been required to show injury and irreparable harm before the trial court could grant an injunction. *Id.* The court concluded that there was no such requirement. *Id.* It also noted that the legislature

the district court."); 101A C.J.S. *Zoning & Land Planning* § 396 (2005) (same).

[7]*See, e.g., Pinecrest Lakes, Inc. v. Shidel*, 795 So. 2d 191, 206 (Fla. Dist. Ct. App. 2001) (where statute specified injunctive relief for zoning violation, legislature created rule, "not a grant of discretion"); *Little Joseph Realty, Inc. v. Town of Babylon*, 363 N.E.2d 1163, 1168 (N.Y. 1977) (zoning violation "must, subject to the existence of any appropriate equitable defenses, be enjoined unconditionally"); *see also* Zygmunt J.B. Plater, *Statutory Violations & Equitable Discretion*, 70 Cal. L. Rev. 524, 527 (1982) ("When a court in equity is confronted on the merits with a continuing violation of statutory law, it has no discretion or authority to balance the equities so as to permit that violation to continue.").

had declared the licensing requirement to be in the public interest and had provided injunctive relief as a remedy for practicing dentistry without a license. *Id.* Under those circumstances, the court held, the trial court had no discretion to deny injunctive relief. *Id.*

**¶57**　　　　The City notes that the sign code provides that regulation of billboards is in the public interest, *see* Tucson Code § 3-2, and it claims that the code further provides the only remedies for a violation: removal or compliance with the code. But the statute at issue in *Hyder* expressly provided that violations could be restrained "'as nuisances per se,'" 114 Ariz. at 546, 562 P.2d at 719, *quoting* A.R.S. § 32-1269(B). As discussed above, however, billboards that violate the City's ordinances are not nuisances per se. Additionally, in *Hyder*, the court was dealing with a statute enacted by the state legislature, which has the authority to set the policy of the state. *Stein v. Sonus USA, Inc.*, 214 Ariz. 200, ¶ 18, 150 P.3d 773, 778 (App. 2007). Although the City council sets the public policy for the City, *Redelsperger v. City of Avondale*, 207 Ariz. 430, ¶ 23, 87 P.3d 843, 849 (App. 2004), it cannot limit the power of the superior court to fashion a remedy in actions for injunctive relief against nuisances other than nuisances per se.

**¶58**　　　　Having concluded the trial court had discretion to fashion a proper remedy, we next address the City's claim that the court abused its discretion in denying relief to the City as to two billboards and concluding violations could be remedied as to three billboards. A trial court abuses its discretion if it commits an error of law or if it "reaches a conclusion without considering the evidence . . . or 'the record fails to provide substantial evidence to support the trial court's finding.'" *Flying Diamond Airpark*, 215 Ariz. 44, ¶ 27, 156 P.3d

31

at 1155, *quoting Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 434, 456, 652 P.2d 507, 529 (1982). We defer to the trial court's factual findings unless clearly erroneous. *See Ahwatukee Custom Estates Mgmt. Ass'n v. Turner*, 196 Ariz. 631, ¶ 5, 2 P.3d 1276, 1279 (App. 2000). A factual finding is clearly erroneous if no substantial evidence supports it. *See Visco v. Universal Refuse Removal Co.*, 11 Ariz. App. 73, 75, 462 P.2d 90, 92 (1969).

**¶59**      Citing the trial court's finding that Clear Channel took title to these billboards knowing there were "legal issues" with them, the City first contends the court erred by concluding the violations were unintentional. It thus argues the court should not have balanced the equities. *See Flying Diamond Airpark*, 215 Ariz. 44, ¶ 10, 156 P.3d at 1152 ("'[E]quitable discretion should not be used to protect an intentional wrongdoer.'"), *quoting Decker v. Hendricks*, 97 Ariz. 36, 41-42, 396 P.2d 609, 612 (1964). But with respect to the billboards at issue in counts 11, 61, 75, and 114, the court expressly found that the original violation by Clear Channel's predecessor had been unintentional. And with respect to the billboard at issue in count 97, although the court made no express finding that the original violation had been unintentional, it implicitly did so in exercising its discretion to deny relief. The record supports those findings. The City does not explain how Clear Channel's acquisition of approximately 20,000 billboards nationwide knowing there were "legal issues" with some of them, including some in Tucson, would render the prior unintentional violation intentional and it cites no authority in support of that argument. We therefore reject it.

32

¶60 The City also contends that the mere extent of the violation is not sufficient to support a finding that a violation is innocent and that no other evidence supported the conclusion that the violations were innocent. But the trial court could properly consider that a violation is minor in determining whether the violation was intentional, especially when compared to more substantial violations. And, in any event, the court's rulings make clear that it relied on evidence other than the extent of the violations. Accordingly, this argument is without merit.

¶61 The City next contends the trial court abused its discretion in concluding that the balance of equities favored a remedy other than removal. Review of this issue requires analysis of each count individually. In doing so, we view the evidence in the light most favorable to sustaining the trial court's findings. *See Sw. Soil Remediation v. City of Tucson*, 201 Ariz. 438, ¶ 2, 36 P.3d 1208, 1210 (App. 2001).

## A. Count 11

¶62 The billboard at issue in count 11 was constructed pursuant to a permit and located in a proper zone. At some point between 1970 and 1980, the billboard was moved onto a separate but contiguous piece of property in a zone that does not allow billboards.[8] It also exceeds the maximum height for the zone in which it is currently located, although apparently it would not exceed the maximum height were it still in the zone in which it had originally been located. In 1980, the City adopted a sign ordinance establishing a minimum

---

[8]The City contends the billboard was moved twice. But there was no admissible evidence of one of the purported relocations. The trial court did, however, find that the billboard had been "relocated many years ago," and this finding is supported by the record.

interval between billboards. The billboard at issue in count 11, whether in its current location or moved back to its original location, violates the minimum interval requirement.

**¶63** The trial court found that the relocation to an improper zone had not been knowing and intentional, noting that the Arizona Department of Transportation did not require a permit for a minor relocation. It also found the violation to be de minimis and concluded, in light of the City's prior lax enforcement of its ordinances, that it was appropriate to exercise "discretion and/or estoppel as to this sign's loss of lawful non-conforming status." It ordered the sign relocated back to its original location.

**¶64** In ordering the billboard at issue in count 11 relocated rather than removed, the trial court suggested it was remedying the loss of a prior nonconforming use, in accordance with Clear Channel's assertion. The character of a particular use is a question of fact, but whether that use was legal is a question of law. *See Maricopa County v. Barkley*, 168 Ariz. 234, 245, 812 P.2d 1052, 1063 (App. 1990). Here, the billboard is admittedly in an incorrect zone today and Clear Channel has not produced any evidence that the billboard was located in the proper zone when the 1980 code was adopted. *See* ¶ 39, *supra* (property owner bears burden of showing valid, nonconforming use). On the contrary, the evidence in the record suggests that the billboard was moved before 1980, when it could potentially have become a lawful, nonconforming use. Thus, despite Clear Channel's claim to the contrary, the billboard was illegal where it was located when the 1980 ordinance was enacted and never obtained nonconforming use status. *See* ¶ 24, *supra*. The court committed legal error in concluding that ordering it moved would remedy the loss

34

of its nonconforming use because it never was a nonconforming use. The court therefore abused its discretion. *See Flying Diamond Airpark*, 215 Ariz. 44, ¶ 27, 156 P.3d at 1155 (legal error constitutes abuse of discretion). We cannot say whether the court would have exercised its discretion in the same way had it properly concluded that the billboard never attained lawful, nonconforming use status. Therefore, unless application of equitable estoppel was appropriate, we cannot affirm the judgment as to this count.

¶65    We review the trial court's decision to apply equitable estoppel for an abuse of discretion. *See id.* (decision not to apply estoppel reviewed for abuse of discretion); *Garden Lakes Cmty. Ass'n v. Madigan*, 204 Ariz. 238, ¶ 10, 62 P.3d 983, 986 (App. 2003) (denial of injunctive relief reviewed for abuse of discretion); *Bartholomew v. Superior Court*, 4 Ariz. App. 50, 52, 417 P.2d 563, 565 (1966) (estoppel an equitable defense to be applied in trial court's discretion). "Questions of estoppel . . . are fact-intensive inquiries. We defer to the trial court with respect to any factual findings explicitly or implicitly made, affirming them so long as they are not clearly erroneous." *John C. Lincoln Hosp. & Health Corp. v. Maricopa County*, 208 Ariz. 532, ¶ 10, 96 P.3d 530, 535 (App. 2004) (citations omitted).

¶66    Equitable estoppel generally applies where (1) "'the party to be estopped commits acts inconsistent with a position it later adopts'"; (2) the other party relies on those acts; and (3) the latter party is injured by "'the former's repudiation of its prior conduct.'" *Whiteco Metrocom*, 194 Ariz. 390, ¶ 22, 983 P.2d at 765, *quoting Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, ¶ 35, 959 P.2d 1256, 1267-68 (1998). "[A]ll these

requirements are conditioned by the general rule that estoppel may apply against the state only when the public interest will not be unduly damaged and when its application will not substantially and adversely affect the exercise of governmental powers." *Valencia Energy Co.*, 191 Ariz. 565, ¶ 40, 959 P.2d at 1269. In *Valencia Energy Co.*, our supreme court relied on a federal case for the proposition that "'estoppel should be applied against the Government with utmost caution and restraint.'" *Id.* ¶ 41, *quoting Schuster v. Comm'r*, 312 F.2d 311, 317 (9th Cir. 1962). Only an "affirmative act[]" that "bear[s] some considerable degree of formalism under the circumstances" can form the basis for the application of estoppel against the government. *Id.* ¶ 36.

¶67    In *Whiteco Metrocom*, we cited *Valencia Energy Co.* for the proposition that estoppel will apply against the government only if its conduct threatens to cause a serious injustice. *Whiteco Metrocom*, 194 Ariz. 390, ¶ 22, 983 P.2d at 765. But the portion of *Valencia Energy Co.* we cited was merely repeating what the supreme court had previously said in *Freightways, Inc. v. Arizona Corporation Commission*, 129 Ariz. 245, 630 P.2d 541 (1981). *See Valencia Energy Co.*, 191 Ariz. 565, ¶ 33, 959 P.2d at 1267, *citing Freightways*, 129 Ariz. at 248, 630 P.2d at 544. The later analysis in *Valencia Energy Co.* does not provide that a threat of "serious injustice" is required to estop the government. Instead, if the traditional elements of estoppel are present, it will apply against the government "when the public interest will not be unduly damaged and when its application will not substantially and adversely affect the exercise of governmental powers." *Id.* ¶ 40. To the extent we suggested in *Whiteco Metrocom* that "serious injustice" is an express

requirement under *Valencia Energy Co.*, we did so in error. The threat of serious injustice to the proponent of estoppel may be considered in determining whether to apply estoppel, but it is not a requirement under *Valencia Energy Co.*

**¶68** The trial court found it appropriate to apply equitable estoppel as to count 11 based on "the prior laxity of enforcement and any real requirement of compliance by the City many years ago." But mere "laxity of enforcement" is not an affirmative act that "bear[s] some considerable degree of formalism under the circumstances" and therefore does not satisfy the standard set out in *Valencia Energy Co. Id.* ¶ 36; *see also Nat'l Adver. Co. v. Ariz. Dep't of Transp.*, 126 Ariz. 542, 544, 617 P.2d 50, 52 (App. 1980) ("The state cannot be estopped from pursuing statutory remedies available to it because of alleged dilatory conduct of its officers in acting to enforce the remedy."); *Thomas & King, Inc. v. City of Phoenix*, 208 Ariz. 203, ¶ 27, 92 P.3d 429, 436 (App. 2004) (stating in dictum that prior lax enforcement will not support an estoppel claim against governmental agency). There is no evidence in the record of an affirmative, formal, authorized act on the part of the City upon which Clear Channel's predecessor could have relied in moving the billboard to an illegal location. The court therefore abused its discretion when it concluded the City was estopped from enforcing the ordinance. Accordingly, we remand this matter to the trial court for further consideration of the exercise of its discretion in fashioning a remedy as to count 11 in light of the discussion above.

**B. Count 61**

¶69        The billboard at issue in count 61 was constructed pursuant to a permit issued in 1987. But the billboard was not constructed in the proper location and intrudes more than seven feet into a public right of way. The trial court found, and Clear Channel does not contest, that the billboard as permitted would have violated the then-existing minimum interval provision.[9] The court noted that the error in the billboard's location is relatively minor compared to errors in the locations of other billboards and that the error was probably attributable to a mistake made by someone other than Clear Channel's predecessor. The court also suggested that, had the error been discovered before the "more rigid sign codes took effect," the City would have allowed the billboard to be relocated. The court ruled, however, that the billboard could not remain in the public right of way and therefore ordered the billboard removed unless relocated to "the property described in the lease."

¶70        The trial court acknowledged the apparent minimum interval violation in its ruling. It also stated that it "reject[ed] the City's attempt to strip this billboard of its permit and lawful status as a result of [the] error in its location." But if the billboard would have violated the minimum interval requirement even had it been constructed in the proper location, it would not have been lawful. *See* 8 Eugene McQuillin, *Municipal Corporations* § 25.153, at 561 (3d ed. 2000) ("A permit for a use prohibited by a valid zoning ordinance, regulation or restriction is void, and subject to revocation.") (footnotes omitted); *cf. Outdoor Sys., Inc. v. Ariz. Dep't of Transp.*, 171 Ariz. 263, 264, 830 P.2d 475, 476 (App. 1992)

---

[9]The trial court apparently found that the minimum interval requirement was 400 feet. On the record before us, we cannot determine whether the minimum interval that applied to this billboard when constructed was 400 feet or 200 feet.

(signs constructed pursuant to permits unlawful because permits violated statute). To the extent the court was relying on its discretion in fashioning a remedy, its conclusion was based on its belief that the billboard would have been lawful if constructed in the proper place. Such a conclusion is inconsistent with the finding of a minimum interval violation. Accordingly, absent estoppel, we cannot uphold the court's decision on count 61. *See Flying Diamond Airpark*, 215 Ariz. 44, ¶ 27, 156 P.3d at 1155 (trial court abuses discretion when decision not supported by record).

¶71 The trial court did not state estoppel was a basis for its decision on count 61 as it did for three other counts. Nor did the court expressly analyze the elements of estoppel in ruling on count 61. It may have applied estoppel inferentially, based perhaps on the fact that the City had issued a permit authorizing construction of that billboard. But because the court did not expressly base its decision on estoppel and it improperly considered lax enforcement as a possible basis for estoppel on another count, we remand this matter to the court so that it may consider the factors that are relevant to a determination of whether to apply estoppel or, in the alternative, to exercise its discretion in fashioning a remedy. *See Whiteco Metrocom*, 194 Ariz. 390, ¶ 24, 983 P.2d at 765-66.

## C. Count 75

¶72 The billboard at issue in count 75 was lawful when constructed in 1978. It became a lawful, nonconforming use in 1980, when the City reduced the maximum billboard height and the minimum required interval from other billboards. Clear Channel later altered the billboard by replacing a face on one side with a larger one. The record does not contain

39

a permit for that alteration. The trial court found the violation was not knowing and intentional and therefore concluded it was appropriate to exercise discretion in fashioning a remedy. It ordered Clear Channel to replace the contested face with a face the same size as the original face and ordered removal if Clear Channel did not comply.

¶73 The City concedes the billboard at issue in count 75 was a lawful, nonconforming use when the face was replaced. The remedy the trial court ordered—restoring the sign to its prior nonconforming use configuration—is the remedy that was ordered by the trial court in *Whiteco Metrocom*. 194 Ariz. 390, ¶ 18, 983 P.2d at 764. We found no abuse of discretion in that remedy in that case.

¶74 The City nevertheless contends this case differs because it was not clear in *Whiteco Metrocom* whether the sign at issue could be brought into compliance with the then-current sign code, whereas this sign cannot be brought into compliance. But in *Whiteco Metrocom*, the court did not order the sign brought into compliance with the current code; it ordered it restored to its prior nonconforming use. *Id*. Thus, it was irrelevant whether the sign could have been brought into compliance. In light of *Whiteco Metrocom*, we cannot conclude that the trial court abused its discretion by ordering the sign returned to its prior, lawful state.

¶75 The City also argues the trial court abused its discretion in balancing the equities, contending increase in the face size was too significant to constitute a minor violation, the City did not contribute to the violation, and the hardships favored the City.

But the court weighed the relevant factors, and we will not reweigh them on appeal. *See Scholten*, 184 Ariz. at 331, 909 P.2d at 398 (trial court in better position to weigh equities).

**D. Count 97**

¶76     The billboard at issue in count 97 was constructed pursuant to a permit, although the permit apparently should not have been issued because the zone in which the billboard was built did not allow billboards. The permit was issued by the City's Building Safety Division, which had authority to issue permits, *see* Ordinance 5102 § 3-14 (1980), was signed by a sign inspector, and appears to be marked "approved." A separate application to the Architectural Approval Board (AAB) is signed and marked "approved." Although the City contends the permit "was issued by a low level City employee at the sign section desk of the City's Development Services Department," the portions of the record the City cites do not support this assertion. The trial court found the City had failed to prove that the AAB had lacked the authority to issue permits or that the permit had been improperly issued. Applying the doctrine of estoppel and otherwise exercising its discretion, the court denied the City relief on count 97.

¶77     In light of the permit, the trial court found the violations other than the location in the wrong zone de minimis. The court noted as other relevant circumstances the lack of objection by the lessor, the character of the neighborhood, and the issuance of other, later permits for electrical work. Because it did not find the location in the wrong zone de minimis, and because it relied on the issuance of the permit, it appears the court's decision was necessarily based on estoppel, not discretion alone.

41

**¶78** As discussed above, equitable estoppel can only apply against the government if there is some affirmative, authorized, formal act. *See Valencia Energy Co.*, 191 Ariz. 565, ¶ 36, 959 P.2d at 1268. A written permit issued by an authorized public official can satisfy that requirement. *Cf. Pingitore v. Town of Cave Creek*, 194 Ariz. 261, ¶ 25, 981 P.2d 129, 133 (App. 1998) (finding sufficiently formal act based on town's issuance of "a variety of permits and variances," zoning clearance, and written response to building permit application).

**¶79** The City contends estoppel could not apply because the AAB was not authorized to issue permits. But the trial court stated it did "not believe that the City ha[d] sufficiently established that the AAB did not have [the] authority [to issue permits] and that the sign did not have a proper permit." The City is correct that equitable estoppel is an affirmative defense, and Clear Channel thus bore the burden of proving its elements. *See Knight v. Rice*, 83 Ariz. 379, 381, 321 P.2d 1037, 1038 (1958); *Lowe v. Pima County*, No. 2 CA-CV 2006-0212, ¶ 34, 2008 WL 683656, *9 (Ariz. Ct. App. Mar. 13, 2008). The City does not, however, claim that the permit was issued by anyone other than a City official; instead, it claims the officials who issued it were without authority to do so. But once Clear Channel established a permit had been issued by a City official in 1981 and additional permits had been issued, the court could correctly have accepted the permit's validity in the absence of any contradictory evidence presented by the City. *See Verdugo v. Indus. Comm'n*, 108 Ariz. 44, 48, 492 P.2d 705, 709 (1972) (public officials "presumed to have done their duty" and their acts "are presumed to be correct and legal in absence of clear and

convincing evidence to the contrary") (citing cases). Thus, although ultimately it remained Clear Channel's burden to prove the elements of estoppel, the burden of producing evidence to show that the issuance of the permit was unauthorized then shifted to the City. *See Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, ¶ 50, 65 P.3d 956, 971 (App. 2003). The court concluded the City had failed to sustain this burden, and the record supports its conclusion.

¶80 The City also argues Clear Channel's predecessor could not have reasonably relied on the permit because it "knew or should have known that the AAB was not authorized to determine sign and zoning code compliance."[10] But, as noted above, the trial court concluded the City had failed to demonstrate that the AAB lacked authority to issue permits or that the permit was improperly issued. Accordingly, in the absence of a factually flawed permit application, the court reasonably could have concluded that Clear Channel's reliance was justified.

¶81 The City also contends that failure to apply estoppel would not result in a serious injustice to Clear Channel because the regulation of billboards is a legitimate exercise of the City's police power and Clear Channel and its predecessor have been earning

---

[10]At oral argument in this court, the City asserted for the first time that Clear Channel's predecessor could not have reasonably relied on the permit because it knew or should have known that the permit was issued for a zone that did not allow billboards. Because the City did not make this argument below or in its briefs, it is waived. *See Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004) ("Generally, issues and arguments raised for the first time at oral argument on appeal are untimely and deemed waived.").

income from the billboard for more than twenty-six years.[11]  It also cites Clear Channel's purported lack of diligence concerning the "legal issues" involving the billboards.  But, as discussed above, serious injustice is not a requirement under *Valencia Energy Co.*  And, although we agree with the City's statement at oral argument that the relief ordered should not exceed the detriment caused to Clear Channel, the trial court reasonably could have concluded that Clear Channel's construction of the billboard pursuant to the permit and Clear Channel's loss of income after it and its predecessor had relied upon the permit for over two decades would constitute an "injury" or "substantial detriment" sufficient to invoke estoppel.  Accordingly, the court did not abuse its discretion.

¶82      The City also contends that application of estoppel here is contrary to the public's interest in removing billboards and nonconforming uses generally.  But this count involves only one billboard that had been constructed many years ago pursuant to a permit.  Determining damage to the public interest depends on the facts of each case.  *See*

_____

[11]The City also cites *Outdoor Systems, Inc. v. Arizona Department of Transportation*, 171 Ariz. 263, 830 P.2d 475 (App. 1992), apparently contending that estoppel cannot apply when based on the fact that a permit was erroneously issued by an authorized public official.  But that general proposition is inconsistent with *Valencia Energy Co.*  And, in *Outdoor Systems*, which pre-dated *Valencia Energy Co.*, this court based its reasoning on the lack of a serious injustice.  *Id.* at 265, 830 P.2d at 477.  As noted above, *Valencia Energy Co.* does not require a showing of serious injustice in order to apply estoppel.  Furthermore, the analysis in *Outdoor Systems* was based on its specific facts.  We distinguished the facts in *Freightways*, noting that, in *Freightways*, "a half a century was sufficient time" for a "'void certificate [to] ripen into a valid certificate.'"  *Outdoor Sys.*, 171 Ariz. at 265, 830 P.2d at 477, *quoting Freightways*, 129 Ariz. at 248, 630 P.2d at 544 (alteration in *Outdoor Sys.*).  *Outdoor Systems*, on the other hand, involved permits issued only two to three years before the violation was discovered.  171 Ariz. at 263, 830 P.2d at 475.

*Freightways*, 129 Ariz. at 248, 630 P.2d at 544. The trial court reasonably could have concluded that application of estoppel to this count would not frustrate the public interest.

**E. Count 114**

¶83        The billboard at issue in count 114 was constructed pursuant to a permit, but it exceeds the thirty-five-foot maximum allowable height for its zone by approximately one-and-a-half to two-and-a-half feet.[12]        The trial court found that the violation was unintentional and de minimis, noting that the City now uses measurement methods that are more precise than those used when the billboard was constructed. Based on "discretion as to remedy and estoppel as to conduct," the court denied relief on count 114.

¶84        The trial court did not abuse its discretion on this count. The evidence at trial supports the court's conclusion that the violation is de minimis and was unintentional. The court could have concluded that the injury to Clear Channel from remediating the minimal violation would have outweighed any benefit to the public.

¶85        The City, citing *Whiteco Metrocom* and *National Advertising Co.*, contends the trial court impermissibly relied, in part, on the City's lax enforcement of its ordinances. But both of those cases involved the application of estoppel to parties that knew or should

[12]Clear Channel claims the sign exceeds the height limitation by "anywhere between eight inches and three feet." But the portion of the transcript it cites for this assertion contains no testimony regarding the height of the billboard. Although there is testimony elsewhere in the transcript regarding various height measurements taken from different places, the trial court found the City's measurements more credible. Under the City's interpretation, the billboard exceeds the height limitation by approximately one-and-a-half to two-and-a-half feet. *See Sw. Soil Remediation*, 201 Ariz. 438, ¶ 2, 36 P.3d at 1210 (court of appeals views evidence in light most favorable to sustaining trial court's findings).

have known of a violation. *See Whiteco Metrocom*, 194 Ariz. 390, ¶ 26, 983 P.2d at 766; *Nat'l Adver. Co.*, 126 Ariz. at 545-46, 617 P.2d at 53-54. Neither case suggests the court cannot consider laxity of enforcement in balancing the equities where there is no intentional wrongdoing.

**¶86** The City also contends the trial court should have balanced the equities in favor of the City because Clear Channel has had the opportunity to earn revenue from this billboard for twenty-nine years. But, again, the court considered these factors. We will not weigh them again. The court therefore did not abuse its discretion in denying relief on count 114.[13]

## Discretion to Order Removal

**¶87** In its cross-appeal, Clear Channel argues the trial court erred by ordering removal, as opposed to remediation, of the billboards associated with counts 80, 102, 116, and 117. As we explained above, this decision was within the court's discretion. *See* ¶ 55, *supra*. As we further explained above, a trial court abuses its discretion if it commits an error of law or if it "reaches a conclusion without considering the evidence . . . or 'the record fails to provide substantial evidence to support the trial court's finding.'" *Flying Diamond Airpark*, 215 Ariz. 44, ¶ 27, 156 P.3d at 1155, *quoting Grant*, 133 Ariz. at 456, 652 P.2d at 529.

---

[13]Because we have concluded the trial court did not abuse its discretion in fashioning a remedy as to count 114, we need not address the City's argument that the court's application of estoppel to that count was inappropriate.

¶88 With regard to count 80, Clear Channel maintained in its brief that the factual basis for the trial court's order was the addition of the second face and argued it should have been allowed to remediate the billboard by removing the second face. Because, as previously discussed and as acknowledged at oral argument, the factual predicate for the court's order of removal was primarily the relocation of the sign, not the addition of a second face, Clear Channel failed to adequately develop its argument regarding this issue and it is therefore waived. *See Jones v. Burk*, 164 Ariz. 595, 597, 795 P.2d 238, 240 (App. 1990) ("Issues not clearly raised and argued in a party's appellate brief constitute waiver of error on review."); *see also* Ariz. R. Civ. App. P. 13(a)(4) (statement of facts must be "relevant to the issues presented for review").

¶89 As to the billboards associated with counts 102, 116, and 117, we have already established that they lost their nonconforming use status when a second face was added to each without a permit. *See* ¶ 48, *supra.* As such, they are subject to regulation under the current sign code, which allows for their removal. *See* Tucson Code §§ 3-19, 3-91, 3-101, 3-102. The trial court found that for each count, the addition of a second face was an intentional act by Clear Channel's predecessor and that, under the applicable sign code, the City would not have granted a permit to add the second face even if Clear Channel had sought one. Clear Channel does not dispute these findings on appeal and does not argue that the court failed to consider the evidence or that the record fails to provide the evidence necessary to support the court's finding. The only remaining ground on which we

could find an abuse of discretion is if the court committed an error of law. *See Flying Diamond Airpark*, 215 Ariz. 44, ¶ 27, 156 P.3d at 1155.

¶90 Clear Channel argues the trial court ignored the decision in *Whiteco Metrocom*. But, as we previously noted, in *Whiteco Metrocom* this court only found that it was not an abuse of discretion to order remediation of signs to which a second face had been added. 194 Ariz. 390, ¶ 19, 983 P.2d at 764-65. *Whiteco Metrocom* says nothing about whether it would be an abuse of discretion to order removal. *See id.* ¶¶ 15-18.

¶91 Clear Channel also argues the sign code has consistently provided for alternative penalties and has never mandated removal. But the code also expressly allows for removal of signs found to be in violation. Tucson Code §§ 3-101, 3-102. The trial court did not commit an error of law by electing a remedy specifically provided for in the code.

¶92 Clear Channel contends that the 1980 Code mandated that the City provide Clear Channel with the option of correcting the violation and that by imposing removal under the "stricter penalties" of the current code, the trial court violated statutory and "constitutional prohibitions against ex post facto laws." This argument fails because, inter alia, it misconstrues the law on nonconforming uses.[14] As we explained above, when a sign is in violation of the current code and does not have legal nonconforming status, it may be regulated under the current code. *See* ¶¶ 24-25, *supra*. Assuming that Clear Channel is correct that the 1980 Code required that a billboard owner be given an opportunity to

---

[14]We also note the constitutional prohibition against ex post facto laws applies only in the context of criminal offenses and penalties. *See Martin v. Reinstein*, 195 Ariz. 293, ¶ 19, 987 P.2d 779, 788 (App. 1999).

correct a violation, that fact is irrelevant here. The court ordered removal based on the fact that the billboards are currently in violation of the current sign code and are not protected by nonconforming status.

¶93        Finally, Clear Channel argues that there is a "mandate" in Arizona that "abhors forfeiture" and cites *Mason v. Hasso*, 90 Ariz. 126, 367 P.2d 1 (1961), and *Eisele v. Kowal*, 11 Ariz. App. 468, 465 P.2d 605 (1970), in support of this assertion. But neither of these cases involves regulation of nonconforming uses. *Mason* addressed a private quiet title action, 90 Ariz. at 127, 367 P.2d at 2, and *Eisele* is about forfeiture in the context of a mortgage foreclosure, 11 Ariz. App. at 469, 465 P.2d at 606. We are not aware of any Arizona case establishing the "mandate" suggested by Clear Channel.[15]   Rather, as previously discussed, *see* ¶ 24, *supra*, Arizona case law supports the "elimination of nonconforming uses 'within the limits of fairness and justice.'" *Jones*, 201 Ariz. 368, ¶ 11, 35 P.3d at 425, *quoting Rotter*, 169 Ariz. at 271, 818 P.2d at 706. Because the trial court's factual findings are not disputed and because we find no basis to conclude the court committed an error of law, the court did not abuse its discretion in ordering removal of the billboards associated with counts 102, 116, and 117.

**Conclusion**

_____

[15]The only case Clear Channel cites that does discuss the concept of forfeiture in the context of a nonconforming use is a Florida case, *3M National Advertising Co. v. City of Tampa Code Enforcement Board*, 587 So. 2d 640 (Fla. Dist. Ct. App. 1991). Although *3M National Advertising* involves a similar fact pattern, its outcome in favor of restoring a nonconforming use to status quo ante is predicated on case law that is inconsistent with Arizona precedent and statutory law. Thus, to the extent the reasoning in *3M National Advertising* supports Clear Channel's position, we decline to adopt it.

49

¶94     For the foregoing reasons, we affirm the judgment as to counts 36, 75, 80, 97, 102, 114, 116, and 117. We remand the case as to count 11 to permit the trial court to further consider the relevant factors in light of our conclusions that the sign never attained lawful, nonconforming use status and that Clear Channel failed to carry its burden to establish the elements of equitable estoppel. We also remand as to count 61 to permit further consideration in light of the factors necessary to apply estoppel against the City or, in the alternative, for the court to exercise its discretion in fashioning a remedy.

_____
JOSEPH W. HOWARD, Presiding Judge

CONCURRING:


_____
JOHN PELANDER, Chief Judge


_____
J. WILLIAM BRAMMER, JR., Judge